IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMANDA SMITH,
    *Plaintiff*,

    v.

RYAN MCCARTHY, SECRETARY OF
THE U.S. DEPARTMENT OF THE
ARMY
    *Defendant*

Civil Action No. ELH-20-419

**MEMORANDUM OPINION**

In this employment discrimination case, Amanda Smith, the self-represented plaintiff, has

filed suit against Ryan McCarthy, then the Secretary of the U.S. Department of the Army ("Army"

or "Agency"). *See* ECF 1 ("Complaint").[1] Smith served in the Army from 2000 to 2003, when she

was honorably discharged with a "VA Disability rating . . . ." *Id.* ¶ 8. She worked for the Army

as a civilian employee from 2005 until her termination in 2014. *Id.* ¶ 9; *id.* at 4.

Smith, who suffers from various medical conditions, alleges that from 2012 to 2014 she

experienced discrimination, a hostile work environment, denial of reasonable accommodation, and

retaliation on the basis of her disability. At the time, she worked as a Program Analyst for the

Army Test and Evaluation Command ("ATEC") at the Aberdeen Proving Ground ("APG") in

Maryland. *Id.* ¶¶ 6, 11.

The Complaint lodges five claims, all under the Rehabilitation Act of 1973, 29 U.S.C. §

701 *et seq.* ("Rehabilitation Act"). Smith also invokes the Americans with Disabilities Act, as

amended ("ADA"), 42 U.S.C. § 12101 et seq. In particular, Smith alleges "Disability

---

[1] Christine Wormuth is now Secretary of the Army. She shall be substituted as the
defendant, pursuant to Fed. R. Civ. P. 25(d).

Discrimination in Violation of the Rehabilitation Act" (Count I); "Failure to Accommodate in Violation of the Rehabilitation Act" (Count II); "Interference in Violation of the Rehabilitation Act" (Count III); Retaliation, in violation of the Rehabilitation Act (Count IV); and "Violation of Confidentiality Provisions of the Rehabilitation Act," under 29 U.S.C. § 791(g) and 29 C.F.R. § 1630.14(b)(1) et seq. (Count V). *See* ECF 1. Despite the caption of Count I, plaintiff also alleges hostile work environment. And, Count III and Count IV both assert retaliation claims.

The Army has moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1), (5), and (6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). *See* ECF 10. The motion is supported by a memorandum (ECF 10-1) (collectively, the "Motion") and multiple exhibits. *See* ECF 10-2; ECF 10-3. Plaintiff opposes the Motion. ECF 15. Defendant has replied. ECF 20.

No hearing is necessary to resolve the motion. For the reasons that follow, I shall construe the Motion as a motion to dismiss. I shall grant the Motion in part and deny it in part.

## I.      Factual Background[2]

As noted, Smith served in the Army from 2000 to 2003. ECF 1, ¶ 8. She was honorably discharged, following a diagnosis of anxiety and Post-Traumatic Stress Disorder ("PTSD"). *Id.* Smith "was given a VA Disability rating [of] PTSD/Anxiety and Panic Disorder." *Id.*

In 2005, Smith began working for the Army as a civilian employee. *Id.* ¶ 9. For many years, she enjoyed "a successful career with numerous promotions . . . ." *Id.*

---

[2] Pages 1 through 5 of the Complaint are all contained in a paragraph labeled "1." A second paragraph, also labeled "1.", appears on page 5 of the Complaint.

As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). And, I may consider many of the defense exhibits, for the reasons addressed, *infra*.

For the most part, I have presented the facts chronologically. However, because of overlapping events, it is not always possible to use a chronological approach.

On May 21, 2012, Smith began working as a Program Analyst for ATEC at APG. *Id.* ¶ 11. Shortly thereafter, plaintiff began to experience "anxiety at work in conjunction with interactions with her supervisor," Barbara Monger, who had been informed that plaintiff suffers from PTSD and anxiety. *Id.* at 1. In early June 2012, Smith "notified her second and third line supervisor that [Monger] was yelling at her in public and making false claims about [plaintiff's] time and attendance." *Id.* ¶ 13.  On June 29, 2012, Smith asked Monger not to yell at her or disparage her in front of her peers.  *Id.* ¶ 14.

Smith alleges that she "experienced a severe panic attack at work" on July 2, 2012. *Id.* ¶ 15. According to plaintiff, Monger continued to mistreat her.  *Id.* ¶ 16.  On August 9, 2012, plaintiff complained to her third line supervisor, Sandra Weaver, and "asked to be reassigned" based on Monger's hostility and treatment. *Id.* ¶ 17. Weaver referred Smith and Monger to mediation with the ATEC Equal Employment Opportunity ("EEO") Director. *Id.*

Smith and Monger participated in mediation on August 16 and 21, 2012, "hosted by the ATEC EEO Director."  *Id.* ¶ 18. Following the mediation and through "early 2013," Monger continued to show "extreme bias and unprofessionalism" toward Smith. *Id.* at 2; *see id.* ¶ 21. For example, plaintiff claims that Monger repeatedly and publicly made accusations to Smith "about [her] time and attendance," although plaintiff insists that she met all work standards.  *Id.* ¶ 23.

According to plaintiff, on April 29, 2013, she arrived seven minutes late to work due to a traffic jam at the APG entrance gate, yet Monger "took the opportunity to belittle Ms. Smith and speak to her in a hostile, aggressive and loud manner." *Id.* ¶ 30. Steve Shumate, a coworker who saw the traffic at the gate and also witnessed the interaction between plaintiff and Monger, "sent Ms. Smith an e-mail consoling her for how her supervisor treated her." *Id.* Later that day, Smith and Monger met with Dave Glenn, Smith's second line supervisor. *Id.* ¶ 31. Monger allegedly

"acted aggressively" towards Smith while they were in Glenn's office. *Id.* According to plaintiff, Monger's actions triggered plaintiff's second "massive panic attack," for which she immediately sought medical attention. *Id.*

On April 29, 2013, after plaintiff's medical visit, she met with the EEO Disability Program Manager, Kelly Keck, to "discuss her medical condition and options to resolve the situation." *Id.* ¶ 32.[3] Also on that day, plaintiff "notified Ms. Sharlene Lyles, ATEC Management and Employee Relations Office . . . of the hostile work environment, treatment by her first line supervisor and severe panic attack she experienced at work." *Id.* ¶ 33. Lyles contacted Glenn "about reassigning Ms. Smith." *Id.* ¶ 33.

Following the incident of April 29, 2013, Smith submitted various requests to her supervisors and Human Resources representatives about a "reassignment or any accommodation to limit contact with her supervisor based on her medical condition." *Id.* at 2; *see id.* ¶¶ 34, 37, 51. She asserts that her requests were generally denied or ignored.  *Id.* ¶¶ 34, 37, 51.

Smith states that she complained to the APG's EEO Office on May 30, 2013.  ECF 1, ¶ 64. She advised that she was "a disabled veteran with PTSD with Anxiety and Panic disorder" and had been "denied consideration for a reasonable accommodation and subject to workplace harassment and retaliation."  ECF 1 at 3.

On May 16, 2013, Smith's doctor signed a Declaration of Medical Emergency and a Certification of Serious Health Condition, which "identified anxiety and panic as the cause." *Id.* ¶ 52.  Smith submitted these documents to Glenn, along with an application to participate in the Voluntary Leave Transfer Program ("VLTP"). *Id.* ¶ 53. On May 21, 2013, Monger approved

---

[3] Keck has since died.  ECF 10-2 at 23; ECF 15 at 7.  But, Keck had documented the meeting.  *See id.*

Smith's request. *Id.* ¶ 57. By June 9, 2013, plaintiff had exhausted her leave but was granted advanced sick leave until June 21, 2013. *Id.* ¶ 76.

According to plaintiff, her doctor stated that she could not return to work until the workplace was free of stressors. *Id.* ¶ 1. But, plaintiff alleges that ATEC insisted that she return to work under the same supervisor. *Id.* ¶¶ 1, 102.

Between April and September 2013, Smith "was scheduled to return to work on several occasions and there were positions to which [she] could have been reassigned that were not offered to [her]." *Id.* at 3. In particular, in September 2013, ATEC did not offer Smith a position because she "had not accepted the terms of a settlement." *Id.* ¶ 89. However, from September 2013 through January 2014, ATEC approved Smith for leave without pay in two-week increments, based on medical documentation that Smith provided. *Id.* ¶ 91.

Smith filed a Formal Complaint of Discrimination with the EEO Office on July 12, 2013. *See* ECF 10-2 at 5-6 ("Claim 0193" or "First Claim"). As to the basis of discrimination, Smith checked the boxes for "Disability: Mental" and "Reprisal." *Id.* at 5. Next to "Mental," plaintiff wrote "Anxiety Dis" and next to "Reprisal" she wrote "Jul 2012 EEO Mediation." *Id.*

In Claim 0193, Smith alleged that she was subjected to a hostile work environment, which "exacerbated her pre-existing service connected anxiety disorder about which the harassing supervisor was aware[.]" *Id.* She also claimed that the Agency failed to accommodate her request for reassignment. *Id.* As "reprisal," she claimed the agency delayed her access to the VLTP by making improper requests for records and also "sabotaged" her worker's compensation claim. *Id.*

On July 25, 2013, the EEO Office advised counsel for plaintiff that plaintiff's discrimination complaint would be submitted to an investigator for formal investigation of the following claims, ECF 10-2 at 8-9:

    a.  On April 29, 2013, Ms. Sharlene Lyle, ATEC G1, denied [plaintiff's] request for reassignment as a reasonable accommodation.

    b.  On May 16, 2013, Ms. Barbara Monger, [plaintiff's] supervisor, disapproved and delayed plaintiff's request for donation to the Volunteer Leave Transfer Program (VLTP) and sabotaged plaintiff's workers compensation claim.

    c.  On May 2, 2013, Mr. Dave Glenn, [plaintiff's] second line supervisor, denied plaintiff's request for reassignment as a reasonable accommodation;

    d.  In May 2013, Ms. Jan Meyer, ATEC CPAC, informed [plaintiff] that reassignment as a reasonable accommodation was denied by ATEC leadership.

    e.  In June 2012, Ms. Barbara Monger, [plaintiff's] supervisor, mocked [plaintiff's] distress when [plaintiff] notified Ms. Monger of a preexisting medical condition.

Smith submitted a "Reasonable Accommodation packet" to Keck on October 8, 2013. *Id.* ¶ 95. According to plaintiff, "the ATEC EEO Director requested Ms. Smith to revise her reasonable accommodation request" and she "submitted [the] documentation requested . . . ." *Id.* ¶ 96. Specifically, she submitted the following documents: "Certification for Serious Health Condition, Medical Emergency Declaration, VA Physician notes recommending time off work, VA Doctor's Note, Therapist Note, APG Occupational Health documentation and Psychiatrist Diagnosis." *Id.* ¶ 98.

On December 30, 2013, Weaver denied Smith additional "LWOP," i.e., leave without pay, and told Smith that she had to return to work on January 6, 2014, or else she would be considered absent without leave ("AWOL"). *Id.* ¶ 102. Plaintiff sent an email to Agency leadership on January 3, 2014, stating that "she would not be able to get medical clearance at that time to report to the same supervisor in the same position at the same location that resulted in her current medical condition." *Id.* ¶ 105.

On January 28, 2014, the Agency issued a denial of plaintiff's request for accommodation based on "inability to work at that time," although the "Agency never consulted" with the APG

physician who had been evaluating Smith's condition. *Id.* ¶ 111. Plaintiff was subsequently placed on absent without leave status. *Id.* at 4. Then, on March 11, 2014, she "received a notice of intent to terminate" due to "excessive AWOL." *Id.* ¶¶ 113, 115. Smith was terminated on May 9, 2014. *Id.* ¶ 1 at 4.

As noted, plaintiff had previously filed an EEO complaint with the Army's EEO Office on May 31, 2013. On May 16, 2014, plaintiff appealed her termination to the United States Merit Systems Protection Board ("MSPB"). ECF 10-2 at 52-57 ("MSPB Appeal").

As to the EEO Charge filed on May 31, 2013, Claim 0193, an investigation was conducted by the Agency. Thereafter, in June 2015, an EEOC administrative judge held an evidentiary hearing. On September 20, 2018, a different administrative judge ("A.J.") issued a "Decision," ruling in favor of the Army. *See* ECF 10-2 at 13-41.[4] The A.J. considered plaintiff's claim under § 717(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., as well as § 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq. *See* ECF 10-2 at 14.

In the Decision, the A.J. identified four issues. *Id.* They generally correspond to the issues previously identified by the EEO Office on July 25, 2013. *See* ECF 10-2 at 8-9. However, where the EEO referenced a claim that Monger mocked plaintiff in June 2012, the A.J. considered alleged hostile conduct from June 2012 through May 2013. *Id.* at 14. And, the A.J. also considered Smith's complaint that, on August 30, 2013, her supervisor made negative statements about plaintiff's performance to the Office of Workers' Compensation Program. *Id.*

---

[4] It appears that a lengthy delay ensued due to the retirement of the administrative judge who had conducted the evidentiary hearing. *See* ECF 10-2 at 13, n.1.

In the A.J.'s lengthy and thorough Decision, the A.J. observed that the allegations at the hearing amounted, among other things, to a harassment claim beginning in June 2012 and a failure to accommodate a disability claim, beginning on April 29, 2013. *Id.* The A.J. found that plaintiff had failed to establish that the Agency subjected her to discrimination or harassment based on her disability. *See id.* After the A.J. reviewed incidents from June 2012 through August 2013, she concluded that they "simply are not enough" to establish harassment. *Id.* at 39. Further, the A.J. found that Smith "failed to demonstrate she is a qualified individual with a disability," because "the overwhelming evidence in the record makes clear that [she] could not perform the duties of any job . . . ." *Id.* at 34. And, the A.J. rejected Smith's retaliation claim, finding legitimate, nondiscriminatory reasons for the Agency's actions. *Id.* at 37-38.

In a "Decision" of November 19, 2019, the EEOC's Office of Federal Operations ("OFO") affirmed the A.J.'s opinion. *See* ECF 10-2 at 43-50. In a comprehensive review, the OFO said, in part, *id.* at 48: "[W]e find that the record in this case depicts a demanding supervisor whose methods were especially troubling to [Smith] due to her medical condition, but that [Smith] has not shown that the Supervisor's actions were taken because of [Smith's] disability or were in reprisal for [her] prior EEO activity."

As to the appeal to the MSPB on May 16, 2014, plaintiff claimed that her termination from ATEC was unlawful for the following reasons, ECF 10-2. at 57:

1.  ATEC failed to accommodate me as a disabled veteran despite extensive attempts to get a reasonable accommodation over a seven month period, working through ATEC EEO, Garrison EEO, and EEOC.

2.  ATEC terminated me for "Excessive AWOL" after I had provided the Agency with over 20 pages of medical documents from medical professionals documenting my condition and need for medical leave. My VA Physician and the post clinic Occupational Health Physician both provided letters to ATEC prior [sic] being placed on AWOL stating that I needed medical leave due to my condition and service connected disability.

3. ATEC denied me the right as a disabled veteran to take LWOP [(leave without pay)] for medical reasons and placed me on AWOL.

4. ATEC treated my medically required absence as a disciplinary offense and terminated me for "Excessive AWOL" and refused to cite the medical cause for my absence or process a medical removal. A condition for my return was to be medically cleared and ATEC was provided documentation from the post Occupational Health that I would not be medically cleared but needed medical leave to be treated by the VA for my medical condition/service connected disability.

In June 2015, plaintiff filed another EEO Claim ("Claim 1851" or "Second Claim"), presenting claims about the Agency's actions subsequent to her removal from ATEC. ECF 10-2 at 59-61. As to the basis of discrimination, she checked the boxes for "Mental" and "Reprisal." *Id.* Next to "Mental" she wrote "PTSD/Anxiety Disorder" and next to "Reprisal" she wrote "29 Apr 13." *Id.*

Claim 1851 stated, *id.* at 59-60:

The very same people who were named in my EEO complaint which came up for hearing on May 22, 2015 are violating the law by failing to provide OPM with critical information regarding my retirement benefits (Life Insurance) which will impact my receipt of life insurance payment and I believe this is due to reprisal for my ongoing EEO complaint.

I am requesting to amend my complaint to include a claim which arose on June 24, 2015. During the EEO hearing into my earlier complaint, I learned that the APG Workers Compensation Office (Cheryl Adams) steered me into the wrong process (cumulative injury versus traumatic injury), thereby depriving me of the opportunity to claim continuation of pay benefits if my claim was approved, and also allowing my harassing supervisor to controvert my claim by attacking my performance and allowing another supervisor who was an eyewitness to avoid providing a supporting statement. I also learned on June 24, 2015 that the eyewitness supervisor provided a statement as soon as Cheryl Adams asked him to do so (in Feb. 2014) though I had been begging her to help me get a statement from him starting in July 2013, and she misled me in 2013 when she told me that she had asked them to provide his statement in response to my earlier requests. Mrs. Adams also provided fax copies to individuals without my permission and refused to provide copies of what medical records were released to the individuals. I had to

go to her first and second line supervisors before I got the assistance I needed because of Mrs. Adams was so unwilling to provide the information I requested. I am alleging this was done deliberately to sabotage my workers compensation claim due to discrimination against me based on disability and/or reprisal.

On or about August 17, 2016, Smith entered into a Settlement Agreement with the Agency. *See* ECF 10-2 at 63-66 ("Settlement Agreement").[5]  The scope of the Agreement is vigorously contested.  By its terms, it was a "full and complete settlement" of the MSPB Appeal and Claim 1851, then pending before the EEOC.  *Id.* at 63.  According to the Army, however, the terms of the release extend beyond the MSBP action and Claim 1851.  *See* ECF 20 at 3.  Plaintiff disagrees.

Under the terms of the Settlement Agreement, the Army agreed to pay Smith $40,000 in compensatory damages. *Id.* at 63, ¶ 1.a. The Settlement Agreement provides, in part, *id.* at 64, ¶ 2.a. (emphasis added):

> . . . Appellant further agrees not to seek to reinstate her appeal or to otherwise attempt to challenge or litigate any matter at issue or reasonably arising therefrom in this appeal, in an administrative or judicial forum. *Further, Appellant waives any claim or suit in any forum or court that she may have against any officer, agent or employee of the Agency for any matter or issue arising from the facts and circumstances that led to the action that is the subject of this settlement agreement.* Further, Appellant agrees to never challenge the validity of this agreement in any administrative or judicial forum.

Notably, in the A.J.'s decision of September 20, 2018, concerning Claim 0193 (ECF 10-2 at 13-41), the A.J. pointed out that plaintiff had filed another complaint on June 26, 2015, *i.e.*, Claim 1851. ECF 10-2 at 14, n.3; *see also id.* at 15, n.4 (noting joint resolution of plaintiff's appeal to MSPB concerning her removal on May 9, 2014).  Moreover, the A.J. observed that the parties had settled Claim 1851 on or about August 17, 2016.  ECF 10-2 at 14, n.3.  Of relevance, the A.J.

---

[5] The Settlement Agreement reflects a date of August 15, 2016.  But, defendant asserts that the settlement occurred on August 17, 2016.  ECF 10-1 at 7.  That date seems to correspond to the date on which the parties signed the Agreement.  *See* ECF 10-2 at 65, 66.

never indicated that the Agreement encompassed Claim 0193, which is the subject of her "Decision."

There is little discussion in the Motion or the opposition about Count V. As to Count V, plaintiff asserts in her suit that she provided confidential medical information to defendant in support of a Worker's Compensation claim. ECF 1, ¶¶ 159, 161. And, she complains that plaintiff improperly sent that information to "an employee who had no reason to view it." *Id.* ¶ 160.

## II.   Standards of Review

As noted, defendant's Motion is styled as a "Motion to Dismiss Or, In the Alternative, For Summary Judgment." ECF 10-1. Defendant's Motion is filed pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and also under Fed. R. Civ. P. 12(b)(6), for failure to state a claim or, alternatively, for summary judgment under Rule 56. In addition, the defendant moves to dismiss under Rule 12(b)(5) and Rule 4(i), alleging insufficient service of process. I shall discuss Rule 12(b)(5) and Rule 4(i), *infra*.

### A.

Pursuant to Fed. R. Civ. P. 12(b)(1), the Army asserts that this Court lacks subject matter jurisdiction as to the claims that Smith failed to exhaust.

Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve*, 628 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Ellenburg v. Spartan Motors Chassis, Inc.*,

519 F.3d 192, 196 (4th Cir. 2008). Thus, the court may properly grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

The defense of sovereign immunity is a jurisdictional bar. It is well settled that "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation omitted), *cert. denied*, ___ U.S. ___, 139 S. Ct. 417 (2018); *see also Cunningham v. Lester*, 990 F.3d 361,365 (4th Cir. 2021) (recognizing sovereign immunity as a jurisdictional limitation and describing it as "a weighty principle, foundational to our constitutional system").

However, the Supreme Court has said that a plaintiff's failure to exhaust administrative remedies does not necessarily divest the court of subject matter jurisdiction. *Fort Bend County v. Davis*, ___ U.S. ___, 139 S. Ct. 1843. 1851 (2019). Rather, exhaustion is a "claim-processing rule," which is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* (cleaned up) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Although a defendant may waive arguments related to administrative exhaustion, if asserted in a timely fashion such objections may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc*., RDB-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*). Therefore, I shall consider the exhaustion issue under Rule 12(b)(6), discussed *infra*.

**B.**

Defendant has styled its Motion in the alternative, under Rule 12(b)(6) and Rule 56.  A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

In general, when ruling on a motion to dismiss, a court "is not to consider matters outside the pleadings or resolve factual disputes . . . ."  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[6]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6)

---

[6] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, *Federal Practice & Procedure* § 1366 (3d ed. 2018). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). As the Fourth Circuit has said, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014); *see Putney v. Likin*, 656 F. App'x 632, 639 (4th Cir. 2016) (per curiam).

However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its

opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).[7]

"To justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub. nom. Gardner v. Ally Fin., Inc.*, 514 F. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874 (4th Cir. 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (per curiam), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods,* 302 F.3d at 244 (citations omitted).  But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

---

[7] As the Fourth Circuit recently said in regard to summary judgment, a verified complaint "'is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.'"  *Goodman v. Diggs*, 986 F.3d 493, 498 (2021) (citation omitted).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Id.* (internal citations omitted).  According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted).

To be sure, the record in this case is well developed, in light of the administrative process before the EEOC that preceded the litigation, which included the opportunity for some discovery. ECF 10-2 at 40. But, plaintiff indicates in her Complaint that ATEC failed to preserve her computer account and "did not produce information in discovery that [] was on Ms. Smith's work laptop" as well as information "on Mr. Keck's laptop." ECF 1, ¶¶ 83, 122. In the 2018 EEOC Decision, the ALJ sanctioned ATEC for the "spoliation of evidence" on the basis of this failure to preserve and produce certain email communications. ECF 10-2 at 40. Specifically, the ALJ stated, *id*.: "After a review of the motions and oral arguments made, sanctions are granted in the form of an adverse inference that the communications at issue would have shown a nexus or causal connection between Complainant's protected EEO activity on April 29, 2013 and the actions she alleged were discriminatory in the instant complaint."

Further, in her opposition, Smith argues that "ATEC misled the EEOC as to their ability to recover documents and emails." ECF 15 at 6. Specifically, she maintains that "ATEC claimed that they could not produce Mr. Keck's emails when they knew this was false[,]" and that "the Defense

Information Systems Agency (DISA) was able to recover the data." *Id.* at 7. Plaintiff claims that these emails "would have shown that ATEC management knew of [her] disability and reasonable accommodation requests beginning on 29 Apr 13." *Id.*

Although Smith does not explicitly assert the need for additional discovery, she is proceeding pro se, and the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer…." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are "liberally construed" and held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same). Therefore, the Court shall construe plaintiff's contentions as to ATEC's failure to produce certain documents as a request for additional discovery.

The case of *McCray*, 741 F.3d 480, is also informative. There, the Fourth Circuit considered whether the district court erred when it granted summary judgment to the defense before plaintiff had an opportunity to conduct discovery. *Id.* at 483. The plaintiff in *McCray*, a former employee of the Maryland Transit Administration for almost 40 years, filed an EEOC Charge alleging, *inter alia*, discrimination under Title VII, based on race and gender. *Id.* at 481-82. In the district court, the MTA moved to dismiss the suit and the plaintiff, through counsel, sought to conduct discovery, pursuant to Rule 56(d). *Id.* at 482. The district court denied plaintiff's Rule 56(d) motion, because the parties had already engaged in extensive discovery during the EEOC investigation and had submitted substantial documentary evidence in support of their positions. *Id.* Therefore, the court considered the MTA's motion as one for summary judgment.

On appeal, the Fourth Circuit stated that discovery is appropriate when "the main issue" is "one of motive" and when "most of the key evidence lies in the control" of the party moving for summary judgment. *Id.* at 484. The Fourth Circuit noted that the plaintiff's Title VII claims required her to show "that she was fired because of discriminatory reasons," and that such evidence was within the control of the MTA. *Id.* "Absent discovery," said the Court, the plaintiff lacked "adequate access to this evidence . . . ." *Id.* Indeed, the Fourth Circuit said that where the district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a sword or mask." *Id.* at 483. The *McCray* Court concluded that summary judgment was premature under Rule 56(d). *Id.* at 481, 484; *see also Goodman v. Diggs*, 986 F.3d 493, 500-01 (4th Cir. 2021); *Putney*, 656 F. App'x at 639.

As in *McCray*, Smith's claims require proof that the Agency knew of her disability and refused her accommodations, interfered with her protected activity, created a hostile work environment, and retaliated against her for engaging in protected activity. Such evidence is allegedly available to ATEC, and it is not apparent that full disclosure was made during the EEOC investigation. ECF 15 at 7. Accordingly, notwithstanding that the parties have already engaged in limited discovery, I will consider defendant's Motion under Fed. R. Civ. P. 12(b)(6), without converting it to a summary judgment motion under Rule 56. *See Adams Housing, LLC v. City of Salisbury, Md.*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam) (A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'") (quoting *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)).

## C.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312,

317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir.

2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243).  But, "in the relatively rare circumstances where facts sufficient to rule

on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak*, 780 F.3d at 606 (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448).  Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger*, 510 F.3d at 450.

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).  In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."  *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n*

*v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id*. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro*, 930 F.3d at 248; *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington*, 684 F.3d at 467. To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

22

322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips*, 572 F.3d at 180. However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

### D.

The Motion is supported by two declarations and seven exhibits. ECF 10-2 contains (1) the Declaration of Heidi Hamrick, a "General Attorney" at ATEC; (2) plaintiff's two EEOC Charges; (3) the EEO's Acceptance of Investigation for Claim 0193; (4) the ALJ's Decision of September 20, 2018; (5) the OFO Decision of November 19, 2019, affirming the ALJ Decision; (6) plaintiff's MSPB Appeal as to her removal from the Army; (7) and the Settlement Agreement. And, ECF 10-3 contains the Declaration of Patrick L. Gray, the Chief Attorney at Civilian Personnel Litigation Branch, concerning service of the suit.

Hamrick's Declaration simply identifies the exhibits. *See* ECF 10-2 at 1-3. Gray's Declaration (ECF 10-3) merely outlines service of process requirements as to the Army with regard to Title VII, and documents plaintiff's failure to serve the suit on the Army's Office of General Counsel or the Army's Chief of the Litigation Division. *Id.* at 3.

The materials in ECF 10-2 that pertain to plaintiff's pursuit of, and the adjudication of, administrative remedies are referenced in and/or integral to the Complaint. Moreover, plaintiff has not contested the materiality or authenticity of the documents. Accordingly, I may consider these documents, without converting defendant's motion to one for summary judgment.

As to the Settlement Agreement (ECF 10-2 at 63-66), plaintiff fails to reference it in her

suit.   Moreover, the Army fails to offer any basis or rationale that would permit the Court to consider a contested document in the context of a motion to dismiss.

To be sure, in response to the Army's contention that the Settlement Agreement bars the suit, plaintiff acknowledges that she entered into a Settlement Agreement with the Army.   And, she does not dispute its validity or authenticity.   *See* ECF 15 at 18.   However, she vigorously maintains that it pertains only to Claim 1851 and the MSPB appeal, and not the claims in this suit. *Id.*   Moreover, she asserts that the parties agreed that the Settlement Agreement did not pertain to Claim 0193.   *Id.*

As I mentioned, the A.J. issued a comprehensive opinion in September 2018 as to Claim 0193, well after the parties executed the Settlement Agreement.   And, the A.J. was certainly aware of the Agreement.   ECF 10-2 at 14, n.3.   Yet, the A.J. did not conclude that the Agreement encompassed Claim 0193, or that the Agreement otherwise rendered the matter moot, as the Army seems to suggest.

In sum, the Army has not provided a legal basis to allow me to consider the Settlement Agreement in the context of a motion to dismiss.   Nor is the dispute as to the scope of the Agreement a matter for resolution in the context of a Rule 12(b)(6) motion.   At this juncture, I decline to consider the Settlement Agreement.

### III.     Discussion

The Army has moved to dismiss the Complaint on several grounds. ECF 10-1 at 12-22. First, it contends that plaintiff's claims are barred by accord and satisfaction, in light of the parties' Settlement Agreement. *Id.* at 12-14. Second, defendant argues that Smith has not exhausted her administrative remedies as to some of her claims, as required under the Rehabilitation Act. *Id.* at 14-16. Third, it asserts that plaintiff failed to allege facts sufficient to support her claims that the

Agency subjected her to a hostile work environment, discrimination, and retaliation, or that it denied her a reasonable accommodation. *Id.* at 16-21. And fourth, the defense claims that plaintiff did not properly serve the government with the suit. *Id.* at 21-22.

### A.  Accord and Satisfaction

As noted, the Army urges the Court to dismiss the Complaint based on the doctrine of accord and satisfaction.  The Maryland Court of Appeals has adopted the definition of accord and satisfaction found in 1 C.J.S., Accord and Satisfaction § 1:

> Accord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' its execution or performance.

*Automobile Trade Assoc. v. Harold Folk Enterprises*, 301 Md. 642, 665, 484 A.2d 612 (1984); *see also Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F. Supp. 3d 886, 911 (D. Md. 2015); *Weston Builders & Devs., Inc. v. McBerry, LLC*, 167 Md. App. 24, 55, 891 A.2d 430, 448 (2006); *Wickman v. Kane*, 136 Md. App. 554, 561, 766 A.2d 241, *cert. denied*, 364 Md. 462, 773 A.2d 514 (2001); *Kimmel v. Safeco Insurance Co.*, 116 Md. App. 346, 361, 696 A.2d 482, 489 (1997); *Barry Properties v. Blanton & McCleary*, 71 Md. App. 280, 286, 525 A.2d 248 (1987); *Air Power, Inc. v. Omega Equipment Corp.*, 54 Md. App. 534, 538, 459 A.2d 1120 (1983).

The doctrine "is comprised of two distinct elements": (1) an accord, which "'is an agreement by one party to give or perform and by the other party to accept, in settlement or satisfaction of an existing or matured claim, something other than that which is claimed to be due'"; and (2) the satisfaction, which "'is the execution or performance of the agreement, or the actual giving and taking of some agreed thing.'" *Weston Builders*, 167 Md. App. at 55, 891 A.2d at 448 (citation omitted).

Of import here, accord and satisfaction is an "affirmative defense in which a defendant must prove (1) a bona fide dispute as to liability; (2) that the parties entered into an agreement regarding the dispute in which one party pays 'a sum in excess of that which he admits he owes and the receipt by the other party of a sum less in amount than he claims is due him, all for the purpose of settling a dispute,' (3) performance of the agreement." *Witherspoon v. Brennan*, 449 F. Supp. 3d 491, 501-02 (D. Md. 2020) (quoting *Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 776 (4th Cir. 1990)); *see Wickman*, 136 Md. App. at 561, 766 A.2d at 245 (recognizing that accord and satisfaction is an affirmative defense and a "method of discharging a contract of cause of action").

As mentioned, the dispute must be bona fide, such that it is "asserted in good faith . . . ." *Anderson v. M & T Bank*, 2018 WL 6120055, at *2 (Md. Ct. Spec. App. Nov. 21, 2018) (quoting *Wickman*, 136 Md. App. at 561). The existence of a bona fide dispute is vital because accord and satisfaction creates a new contract that must be supported by consideration, which is the compromise the parties reach. *Anderson*, 2018 WL 6120055, at *2.

In addition to a bona fide dispute, a valid accord requires that the parties have knowledge that a payment is intended to be in full satisfaction of the claim. *Kimmel*, 116 Md. App. at 357, 696 A.2d at 487-88 ("On several occasions, this Court has also held that, when a claim is disputed, acceptance of payment, coupled with knowledge that payment is intended fully to satisfy a disputed claim, constitutes an accord and satisfaction that bars any further recovery."); *see also Washington Homes v. Baggett*, 23 Md. App. 167, 174, 326 A.2d 206, 210 (1974) ("There must be accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise.") (quoting 6A. Corbin, Contracts, § 1277 (1962)); *see also Bala*, 614 F. App'x.

at 639 ("Waiver of Title VII claims through settlement . . . is authorized, provided the waiver is knowing, voluntary, and part of a bargain that resolves the underlying employment discrimination dispute."); *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 211 (4th Cir. 2009) ("Settlement agreements operate on contract principles, and thus the preclusive effect of a settlement agreement 'should be measured by the intent of the parties.'").

In *Bala*, 614 F. App'x. 636, for example, the plaintiff brought a Title VII claim for retaliatory discharge against his employer when he had already signed a settlement agreement for the same claim. In the agreement, the plaintiff "agreed to 'waive any rights accorded to him pursuant to the hearing officer's decision . . . .'" *Id.* at 638 (citation omitted). Accordingly, the Court affirmed the district court's decision to grant summary judgment to the employer, concluding that the plaintiff got "the benefit of his bargain" and could not seek a remedy in court "after knowingly and voluntarily relinquishing the underlying claim." *Id.* at 637; *see id.* at 640.

In *Conway v. Pompeo*, 1:16-cv-01087, 2018 WL 8800525 (E.D. Va. Sept. 17, 2018), the parties entered into a settlement agreement with an "[u]nconditional [r]elease . . . from any and all complaints, claims, liabilities, obligations, and causes of action, related to or deriving from the events that form the basis of any and all claims [the employee] may have beginning from the date [the employee] began work in any capacity with the Agency until the date of signature on this agreement." *Id.* at *4. The court found that the agreement prohibited "any and all subsequent claims arising from events that occurred during Plaintiff's employment with the Agency" before the agreement, but did *not* bar claims arising from events subsequent to the signing of the agreement. *Id.* at *4-5; *see also Webster v. Esper*, 1:20-cv-00009, 2020 WL 974415 (E.D. Va. Feb. 28, 2020).

Here, the Agency argues that Smith's claims are barred by accord and satisfaction because the parties executed a Settlement Agreement in 2016. ECF 10-1 at 12. Specifically, defendant asserts that plaintiff's claims in the suit "pre-date the August 2016 Agreement" and "'arise from the same facts that led to the Agreement.'" ECF 10-1 at 13 (citing *Webster*, 2020 WL 974415; *Conway*, 2018 WL 8800525). In response, Smith argues that the Agreement "only covered" EEO Claim 1851 and the MSPB Appeal, which were "limited to the wrongful termination of Ms. Smith" and interference with her disability retirement. ECF 15 at 18.

Accord and satisfaction is, as noted, an affirmative defense.  In advancing this argument, the Army relies primarily on the Settlement Agreement.  However, I have concluded that, in the posture of the case, I may not consider the Settlement Agreement.  It follows that I cannot determine here whether the doctrine of accord and satisfaction bars plaintiff's claims.

Accordingly, I decline to dismiss the suit based on the doctrine of accord and satisfaction.

## B.  Exhaustion

Defendant seeks dismissal of some or all of Counts I, III, IV, and V, claiming failure to exhaust administrative remedies.  As noted, Count I asserts disability discrimination and a hostile work place.  42 U.S.C. § 12102(1).  ECF 1 at 20.  Count II asserts failure to accommodate.  Count IV alleges retaliation.  And, Count V alleges a violation of confidentiality provisions as to medical records.

As discussed, *infra*, the Rehabilitation Act prohibits federal agencies from discriminating against qualified employees based on a disability and authorizes civil actions to redress discrimination.  *Figueroa v. Geithner*, 711 F. Supp. 2d 562, 569 (D. Md. 2010).  The "standards used to determine whether an employer has discriminated" under the Rehabilitation Act are those that apply to the ADA.  *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001).

The Fourth Circuit has said: "Rehabilitation Act claims against the federal government must comply with the same administrative procedures that govern federal employee Title VII claims." *Wilkinson v. Rumsfeld*, 100 F. App'x 155, 157 (4th Cir. 2004) (citing *Doe v. Garrett*, 903 F.2d 1455, 1460-61 (11th Cir. 1990)).  Therefore, to assert a claim under the Rehabilitation Act in federal court, a federal employee must first exhaust administrative remedies.  *Wilkinson*, 100 F. App'x at 157; *see Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006) (en banc) (Title VII); *Young v. Nat'l Ctr. for Health Servs. Research*, 828 F.2d 235, 237 (4th Cir. 1987) (Title VII); *Zografov v. VA Med. Ctr.*, 779 F.2d 967, 968-69 (4th Cir. 1987) (same); *see also Melendez v. Sebelius*, WMN-13-02747, 2014 WL 1292221, at *1 (D. Md. Mar. 27, 2014) ("A federal employee who seeks to enforce her rights under Title VII or the Rehabilitation Act must exhaust [her] available administrative remedies prior to pursuing an action in federal court . . . ."); *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 462 (D. Md. 2002) ("Before filing a civil action in federal court until Title VII or the Rehabilitation Act, a federal employee is required to exhaust all available administrative remedies.).[8]

"The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *see Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406–07 (4th

---

[8] The Rehabilitation Act does not require administrative exhaustion by non-federal employees.  *See Bowman-Cook v. Wash. Metro. Area Transit Auth.*, DKC-14-1877, 2017 WL 3592450, at *5 n.4 (D. Md. Aug. 21, 2017) ("Non-federal employees are not required to exhaust any administrative remedies under the Rehabilitation Act . . . ."); *Harris v. O'Malley*, WDQ-13-2579, 2015 WL 996557, at *5 (D. Md. Mar. 4, 2015) ("'[C]ourts have uniformly held that non-federal employees need not exhaust administrative remedies before bringing a private action under Section 504'" of the Rehabilitation Act) (citation omitted); *see also Raiford v. Md. Dep't of Juvenile Serv's*, DKC-12-3795, 2014 WL 4269076, at *7 n.7 (D. Md. Aug. 28, 2014) (stating that, in the context of a Section 504 claim brought by a non-federal employee, the "Rehabilitation Act—unlike the ADA—has no administrative exhaustion requirement").

Cir. 2013).  Administrative exhaustion advances the complementary goals "of protecting agency authority in the administrative process and promoting efficiency in the resolution of claims." *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (internal quotation marks and alterations omitted); *see also Balas*, 711 F.3d at 406-07.

The "administrative remedies available for federal employees are significantly broader than the administrative remedies for employees in the private sector."  *Laber*, 438 F.3d at 416. And, the Fourth Circuit has admonished that the exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit."  *Chacko v. Patuxent Inst*., 429 F.3d 505, 510 (4th Cir. 2005).  If a federal employee fails to exhaust her administrative remedies, she is generally barred from filing suit.  *See, e.g.*, *Miles*, 429 F.3d at 491; *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *Frank v. England*, 313 F. Supp. 532, 536 (D. Md. 2004) ("Before an employee has standing to pursue a claim against a federal employer under Title VII, he must first exhaust the available administrative remedies by proceeding before the agency charged with the discrimination.").  In other words, failure to comply generally mandates dismissal, *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov*, 779 F.2d at 970), unless the plaintiff demonstrates that she was unaware of the time limits for contacting an EEO counselor, or the government engaged in affirmative misconduct in relation to the plaintiff seeking counseling.  *Lorenzo*, 456 F. Supp. 2d at 734–35; 29 C.F.R. § 1614.105(a)(2).[9]

---

[9] Timeliness provisions in Title VII, the ADEA, and other federal anti-discrimination statutes are treated as statutes of limitations.  Such claims must be raised by the defendant as an affirmative defense and are subject to exceptions such as waiver, equitable tolling, and equitable estoppel.  *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982); *Verrier*, CCB-09-402, 2010 WL 1222740, at *8.  *Cf. Henderson v. Shinseki,* 562 U.S. 428, 435 (2011) (urging "discipline" against applying the "jurisdictional brand" to rules that do not "govern[ ] a court's adjudicatory capacity," even where such rules are "important and mandatory"); *Jones v. Bock,* 549

Moreover, the administrative exhaustion process has substantive effect. Generally, it limits the scope of a plaintiff's federal lawsuit to those parties and claims named in the administrative charge. *See* 42 U.S.C. § 2000e–5(f)(1); *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012); *Causey v. Blog*, 162 F.3d 795, 800 (4th Cir. 1998); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Thus, "when the claims in [the] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge,' they are procedurally barred." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Chacko*, 429 F.3d at 508). To illustrate, the Fourth Circuit has stated that a "'claim will ... typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits.'" *Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 156, 161 (4th Cir. 2018) (alterations in *Nnadozie*) (quoting *Chacko*, 429 F.3d at 509).

That said, the EEOC charge "'does not strictly limit a ... suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination[.]'"*Miles*, 429 F.3d at 491 (citation omitted); *see Chacko*, 429 F.3d at 512. And, because "EEOC charges often are not completed by lawyers," the Fourth Circuit has instructed courts to "construe them liberally." *Chacko*, 429 F.3d at 509; *see Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). Federal courts may hear claims that were not presented to the EEOC so long as they are "'reasonably related'" to the plaintiff's EEOC charge "'and can be expected to follow from a reasonable administrative investigation . . . .'" *Sydnor*, 681 F.3d at 594 (quoting

U.S. 199, 212 (2007) (stating, in the context of claims under the Prison Litigation Reform Act, that exhaustion is an affirmative defense).

*Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000)); *see also Stewart*, 912 F.3d at 705; *Miles*, 429 F.3d at 491 (noting that EEOC charge "'does not strictly limit a ... suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination'") (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)).

The Agency argues that plaintiff has failed to exhaust administrative remedies for claims relating to "(i) negative performance appraisals and being placed on leave without pay for discriminatory and retaliatory reasons, as Plaintiff alleges in Counts I and IV, (ii) ATEC interfering with Plaintiff's rights under the Rehab Act, as Plaintiff alleges in Count III, (iii) Plaintiff's suspension, being transferred to a position with curtailed job duties and responsibilities, and being constructively demoted for retaliatory reasons, as Plaintiff alleges in Count IV, and (iv) the Agency breaching her confidentiality when her medical records were shared with an unauthorized person, as Plaintiff alleges in Count V.[]" ECF 10-1 at 15.

As the defense exhibits reflect, over a lengthy period, plaintiff presented a laundry list of grievances to her supervisors and to EEO representatives, including claims of denial of requests for reasonable accommodation due to a disability; interference with the VLTP; being placed on AWOL status; a hostile work environment; retaliation; denial of LWOP for medical reasons; reprisal; and interference with her worker's compensation claim. Plaintiff raised the issue of a negative performance appraisal in Claim 1851, when she asserted that Cheryl Adams had allowed her "harassing supervisor to controvert [her Worker's Compensation] claim by attacking [her] performance." ECF 10-2 at 59. And, she made various complaints as to a demeaning and hostile work environment.

To the extent that plaintiff did not make textbook assertions of her viable claims, the allegations in the suit are reasonably related to her prior complaints, with one exception. Differentiating plaintiff's assertions at the administrative level from those set forth in the Complaint would be like splitting hairs. And, it would be contrary to the liberal reading required for a plaintiff's administrative charges. *Chacko*, 429 F.3d at 509.

However, plaintiff never presented an administrative claim concerning breach of confidentiality by the Agency as to her medical records. Count V is subject to dismissal for failure to exhaust.

### C.  Failure to State a Claim

Defendant moves to dismiss plaintiff's claims under the Rehabilitation Act, pursuant to Rule 12(b)(6). Those claims are as follows: 1) disability discrimination; 2) failure to accommodate; 3) retaliation; and 4) hostile work environment. Count III, for "Interference in violation of the Rehabilitation Act," and Count IV, "Retaliation in Violation of the Rehabilitation Act," are substantively the same. In both counts, plaintiff complains that she engaged in protected EEO activity and was subjected to retaliation, intimidation, and harassment.

### 1.  Proof Scheme

In analyzing the claims, I am guided by the proof scheme articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McDonnell Douglas* refers to "a procedural device, designed only to establish an order of proof and production" *at trial*, in a circumstance where there is no direct evidence of discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). In contrast, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

The *McDonnell Douglas* proof scheme pertains to trial.  Reference to the proof scheme at this juncture serves only to inform the court's evaluation of the motion to dismiss.  *Cf. Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (recognizing that "a Title VII plaintiff may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas Corp. . . .*"); *Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (same).  At trial, the "'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination."  *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Cent. Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017).  Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an employee "under circumstances which give rise to an inference of unlawful discrimination."  *Burdine*, 450 U.S. at 253.

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action.  *Hoyle*, 650 F.3d at 336; *see Reeves*, 530 U.S. at 142; *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam).  "If the defendant carries this burden of production, the presumption

raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255.  In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11.  The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trs. of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As indicated, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. At the motion to dismiss stage, however, a plaintiff need not establish a prima facie case of discrimination under *McDonell Douglas*. In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court observed that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, ___ U.S. ___, 136 S. Ct. 1162 (2016).

However, as the Second Circuit has noted, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly*, the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of Twombly is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" Thus, the question at the motion to dismiss stage is whether the

plaintiff has stated "a plausible claim for relief under [the Rehabilitation Act] . . . ."  *Ciociola v. Balt. City Bd. of Sch. Comm'rs*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016).

### 2.   The Rehabilitation Act and the ADA

Section 504(a) of the Rehabilitation Act, codified, as amended, at 29 U.S.C. § 794(a), provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

The ADA provides:  "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

The Rehabilitation Act was enacted seventeen years prior to the ADA.  Title II of the ADA is closely related to § 504 of the Rehabilitation Act and, to "the extent possible, [courts] construe similar provisions in the two statutes consistently."  *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214 (4th Cir. 2002); *see Seremeth v. Board of County Comm'rs Frederick Co.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012) ("Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is 'substantially the same.'") (citation omitted); *Rogers v. Dept. of Health & Env'l Control*, 174 F.3d 431, 433-34 (4th Cir. 1999) (stating that courts may apply Rehabilitation Act precedent in interpreting the ADA, and vice versa).  Both statutes "require a plaintiff to demonstrate the same elements to establish liability."  *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 461 (4th Cir. 2012); *see Smith v. Farnsworth*, ___ F.3d ___, 2021 WL 3889282, at *8 n.4 (4th Cir. Sept. 1, 2021).

The statutes "share the same definitions of disability." *Rogers*, 174 F.3d at 433.  And, Title II of the ADA explicitly provides that "[t]he remedies, procedures, and rights" provided under §

504 of the Rehabilitation Act "shall be the remedies, procedures, and rights [that Title II of the ADA] provides to any person alleging discrimination on the basis of disability. . . ." 42 U.S.C. § 12133. In turn, the Rehabilitation Act incorporates by reference the "remedies, procedures, and rights" established by Title VI of the Civil Rights Act of 1964 (codified at 42 U.S.C. § 2000d *et seq.*), which prohibits discrimination on the basis of race, color, or national origin by recipients of federal financial assistance. 29 U.S.C. § 794a(a)(2).

Despite the general congruence of Title II of the ADA and § 504 of the Rehabilitation Act, a plaintiff must show a different "causative link between discrimination and adverse action" under the two statutes. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 469 (4th Cir. 1999). Under Title II of the ADA, a plaintiff need only prove discrimination "by reason of" disability. 42 U.S.C. § 12132. But, a successful Rehabilitation Act claim requires a showing of discrimination "*solely* by reason of" disability. 29 U.S.C. § 794(a) (emphasis added); *see Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 n.17 (4th Cir. 2005) ("[W]e have recognized that the causation standards under Title II of the ADA and § 504 of the Rehabilitation Act are 'significantly dissimilar.'") (quoting *Baird*, 192 F.3d at 469).

### 3. Disability Discrimination (Count I)

In Count I, plaintiff lodges a claim of discrimination as a result of her disabilities, in violation of the Rehabilitation Act and the ADA. ECF 1, ¶¶ 124-131. Defendant asserts that the allegations in the Complaint "foreclose an inference of discrimination" and "show that Plaintiff was not meeting the legitimate expectations of her supervisor." ECF 10-1 at 21.

"To establish a claim of disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a "qualified individual" for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of

38

her disability.'" *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (quoting *EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)); *see Smith v. Farnsworth*, ___ F.3d ___, 2021 WL 3889282, at *9 (4th Cir. Sept. 1, 2021).

Thus, to state a prima facie claim of discrimination under the Rehabilitation Act, the plaintiff must allege that: (1) she is disabled; (2) she was otherwise qualified for the position; and (3) she suffered an adverse employment action *solely* on the basis of the disability. *Perry*, 429 F. App'x at 219-20 (citing *Constantine*, 411 F.3d at 498); *see also Nat'l Fed. of the Blind v. Lamone*, 813 F.3d 494, 502-03 (4th Cir. 2016); *Baird v. Rose*, 192 F.3d 462, 467–70 (4th Cir. 1999); *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264–65 & n. 9 (4th Cir. 1995).

A disability is defined, *inter alia*, as "A physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g). Major life activities include working. 29 C.F.R. § 1630.2(i). A "qualified individual with a disability" means "an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m).

Smith alleges that defendant discriminated against her on "account of her disability," by issuing "negative performance appraisals, placing her on absent without leave, and removing her from federal service." ECF 1, ¶ 128. Further, she claims that she was treated "different than coworkers" *Id.* at 4; *see id.* ¶ 75.

It is undisputed that plaintiff has a qualifying disability.  And, she has plausibly alleged that she was terminated because of her disability.  Whether she was, in fact, qualified, is in dispute. But, it is not an issue that I can decide here.

In my view, the allegations are sufficient to state a claim for disability discrimination. Therefore, I shall deny the Motion with respect to plaintiff's discrimination claim.  And, I leave for another day whether the claim is otherwise barred by the Settlement Agreement.

### 4. Failure to Accommodate (Count II)

In Count II, plaintiff asserts a failure to accommodate claim under the Rehabilitation Act. ECF 1, ¶¶ 132-140.

To establish a prima facie case for failure to accommodate, the plaintiff must show: (1) the employee was an individual with a disability within the meaning of the statute; (2) the employer had notice of the disability; (3) with reasonable accommodation, the employee could perform the essential functions of the position; and (4) the employer refused to make such accommodations. *Farnsworth*, 2021 WL 3889282, at *12; *Jacobs*, 780 F.3d at 579; *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013); *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001); *see also Stephenson v. Pfizer*, 641 F. App'x 214, 219 (4th Cir. 2016) (per curiam).  The plaintiff bears the burden "to identify an accommodation, and ultimately, she must persuade a trier of fact that the accommodation is reasonable."  *Farnsworth*, 2021 WL 3889282, at *12; *see Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002).

The Army does not dispute that plaintiff had a disability within the meaning of the statute and that the Agency had notice of the disability. But, defendant argues that plaintiff "seeks what is, as a matter of law, not a reasonable accommodation, but an impermissible demand that ATEC take a specific personnel action." ECF 10-1 at 20. It also posits that plaintiff did not plead facts showing that she could perform the essential functions of her position. *Id.* at 20 n.6.

I need not repeat the *McDonnell Douglas* framework.  Viewing the facts in the light most favorable to Smith, plaintiff satisfies each element of a failure-to-accommodate claim.

There is no dispute that Smith qualifies as an individual with a disability within the meaning of the statute and that her employer was aware of that disability. Further, as outlined in the Complaint, plaintiff made repeated requests for accommodations. Among other things, plaintiff asked to be assigned to a new supervisor. *See, e.g.,* ECF 1, ¶¶ 34, 37.  Although the Agency may not have been required to offer telework as an accommodation, I cannot make the determination, on this record, as to whether it would have been a reasonable accomodation.  *See Farnsworth*, 2021 WL 3889282, at *12 (noting that the agency was not required to offer the employee a remote work accommodation).  The facts may establish, for example, that others were allowed to work remotely.  In any event, it seems that plaintiff's primary request was for a new supervisor.

As noted, there is a dispute as to Smith's ability to perform the essential functions of an alternative position.  But, this is not a question I can resolve at this juncture.

Accordingly, I shall deny the Motion as to plaintiff's failure-to-accommodate claim in Count II.  Again, I leave for another day whether any failure-to-accommodate claim was extinguished by the Settlement Agreement.

### 5. Retaliation (Counts III and IV)

The Rehabilitation Act makes it unlawful for employers to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter ...." 42 U.S.C. § 12203(a) (ADA retaliation provision); *see* 29 U.S.C. § 791(f) (incorporating ADA standards in 42 U.S.C. § 12111 *et seq.*).

To establish a prima facie case of retaliation under the Act, a plaintiff must show that: (1) she has engaged in protected conduct; (2) "she suffered an adverse action subsequent to engaging in the protected conduct"; and (3) "there was a causal link between the protected activity and the adverse action." *Laber*, 438 F.3d at 432; *see Farnsworth*, 2021 WL 3889282, at *13; *Strothers v.*

41

*City of Laurel*, 895 F. 3d 317, 326-27 (4th Cir. 2018); *Smyth-Riding v. Sci. Eng'g Servs., LLC*, 699

F. App'x 146, 151 (4th Cir. 2017); *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011); *EEOC*

*v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005).

A plaintiff must first establish that she engaged in protected activity.  The Fourth Circuit

has explained that, "in the context of a retaliation claim, a 'protected activity' may fall into two

categories, opposition and participation."  *Navy Fed. Credit Union*, 424 F.3d at 406; *see Netter v.*

*Barnes*, 908 F.3d 932, 937 (4th Cir. 2018).  "An employer may not retaliate against an employee

for participating in an ongoing investigation or proceeding [], nor may the employer take adverse

employment action against an employee for opposing discriminatory practices in the

workplace."  *Laughlin*, 149 F.3d at 259; *see* 42 U.S.C. § 2000e-3(a).

The second element is that of an "adverse action."  An "adverse employment action" is one

that "'constitutes a significant change in employment status, such as hiring, firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits.'"  *Hoyle*, 650 F.3d at 337 (quoting *Burlington Indus., Inc. v. Ellerth*,

524 U.S. 742, 761 (1998)); *see James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir.

2004).  But, in *Strothers*, 895 F.3d at 327, the Fourth Circuit explained that an "adverse

*employment* action" is not the standard in a retaliation case.  (Emphasis added.)

In other words, the adverse action "need not be employment or workplace-related in order

to sustain a retaliation claim."  *Id.*; *see also Burlington Northern & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 64 (2006) ("*Burlington Northern*") ("[T]he antiretaliation provision, unlike the

substantive provision, is not limited to discriminatory actions that affect the terms and conditions

of employment.").  That said, "retaliatory actions do have to be 'materially adverse'—such that

they 'might have dissuaded a reasonable worker' from engaging in protected activity."  *Strothers*,

895 F.3d at 327 (quoting *Burlington Northern*, 548 U.S. at 68). Put another way, "[t]he anti-retaliation provision of Title VII does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) (quoting *Burlington Northern*, 548 U.S. at 68). Nor does "a personal conflict alone . . . constitute retaliation." *Spencer v. Va. State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019).

The Fourth Circuit has found that "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" constitute adverse actions. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). Reassignment of job function may also constitute an adverse action. *Young v. Montgomery Cty.*, PX-18-2054, 2019 WL 1596992, at *4 (D. Md. Apr. 15, 2019) (citing *Ellerth*, 524 U.S. at 761-62). But, "[a]bsent evidence that a new position is significantly more stressful than the last, vague allegations of stress resulting from reassignment cannot support a claim of discrimination under Title VII." *Boone*, 178 F.3d at 256. At a minimum, a plaintiff must demonstrate that "the reassignment had some significant detrimental effect on" the employee. *Id.*

To establish causation, the plaintiff bears the burden of establishing that the alleged retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Southwestern Medical Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see also Irani v. Palmetto Health,* 767 F. App'x 399 421 (4th Cir. 2019) (per curiam). The plaintiff may proceed either by direct evidence "or by proving that any non-retaliatory justification for the [adverse action] was pretextual." *Netter*, 908 F.3d at 938; *see Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

Nevertheless, "establishing a 'causal relationship' at the prima facie stage is not an onerous burden." *Strothers*, 895 F.3d at 335; *see Farnsworth*, 2021 WL 3889282, at *14. Indeed, "very

little evidence of a causal connection is required to establish a prima facie case of retaliation." *Roberts v. Glenn Industrial Group, Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (citing *Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012)); *see Farnsworth*, 2021 WL 3889282, at *14.

"A plaintiff may attempt to demonstrate that a protected activity caused an adverse action 'through two routes.'" *Roberts*, 998 F.3d at 123 (quoting *Johnson v. United Parcel Service, Inc.*, 839 F. App'x 781, 783-84 (4th Cir. 2021)); *see Farnsworth*, 2021 WL 3889282, at *14. "A plaintiff may establish the existence of facts that 'suggest[] that the adverse action occurred because of the protected activity.'" *Roberts*, 998 F.3d at 123 (citing *Johnson*, 839 F. App'x at 783-84; *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (recognizing that relevant evidence may be used to establish causation)). Or, a plaintiff may demonstrate that "the adverse act bears sufficient temporal proximity to the protected activity." *Johnson*, 839 F. App'x at 784 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

As to the temporal route, there must exist "some degree of temporal proximity to suggest a causal connection." *Constantine*, 411 F.3d at 501. Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'" *Id.* (citation omitted). And, "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 790 (D. Md. 2013) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)).

Moreover, mere temporal proximity is not necessarily enough to create a jury issue as to causation. "'Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of

retaliation does not arise.'" *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (citation omitted) (affirming summary judgment where the "actions that led to [plaintiff's] probation and termination began before her protected activity, belying the conclusion that a reasonable factfinder might find that [defendant's] activity was motivated by [plaintiff's] complaints").

The Fourth Circuit recently made clear in *Farnsworth* that the *McDonnell Douglas* proof scheme applies to a retaliation claim. *Farnsworth*, 2021 WL 3889282, at *13. Moreover, temporal proximity is not the sole avenue to establish causation. *Id.* at *14. Rather, temporal proximity is one of two paths to show causation.

In this case, it is clear that plaintiff engaged in various forms of protected activity, including meeting with an EEO counselor on April 29, 2013, and filing an EEO charge in May 2013. ECF 1, ¶¶ 6, 63; *see Okoli*, 648 F.3d at 223; *Laughlin*, 149 F.3d at 259. Further, the Complaint clearly alleges that plaintiff experienced adverse action after she engaged in protected activities. Plaintiff asserts that she was subjected to retaliation "through negative performance appraisals and evaluations, placing her on leave without pay, suspending her, transferring her to a position with significantly decreased job duties and responsibilities, constructively demoting her, demoting her, and removing her from federal service." ECF 1, ¶ 154; *see also id.* ¶ 145.

Negative performance evaluations, without more, do not rise to the level of an adverse action. *See Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015) (per curiam) (declining to find poor performance review constituted an adverse action where the plaintiff failed to show the review changed his employment status or his compensation); *Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (stating that defendant's negative performance evaluation would not dissuade a reasonable employee from making or

supporting a charge of discrimination); *Smith v. Vilsack*, 832 F. Supp. 2d 573, 583 (D. Md. 2011); *Laughlin*, 149 F.3d at 259; *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 775 (4th Cir. 1997).  But, plaintiff's alleged suspension, demotion, and ultimate removal are unquestionably adverse actions.

In the light most favorable to plaintiff, she has alleged facts that, if proven, amount to adverse actions taken by the Army in retaliation for her protected activity.  Therefore, I decline to dismiss Counts III and IV.    However, this does not preclude the Army from arguing, at the appropriate time, that plaintiff relinquished her retaliation claim in the Settlement Agreement.

### 5. Hostile Work Environment (Counts I and IV)

In Counts I and IV, plaintiff lodges hostile work environment claims under the Rehabilitation Act. ECF 1, ¶¶ 127, 130, 153, 156.

To establish a claim of hostile work environment under the Rehabilitation Act, plaintiff must demonstrate that she "is a qualified individual with a disability." *Edmonson v. Potter*, 118 Fed.App'x. 726, 730 (4th Cir. 2004) (per curiam). She must also demonstrate that the alleged conduct of the employer: (1) was unwelcome; (2) resulted because of her disability; (3) was "'sufficiently severe or pervasive' to alter the conditions" of her employment; and (4) was "imputable to [her] employer." *Pueschel v. Peters*, 577 F.3d 558, 565-66 (4th Cir. 2009) (quoting *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 338 (4th Cir. 2003) (en banc)); *see Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019).

The first element, unwelcome conduct, "is not a high hurdle."  *Strothers*, 895 F.3d at 328. The Fourth Circuit has explained that "an employee can demonstrate that certain conduct is unwelcome simply by voicing her objection to the alleged harasser or to the employer." *Id.* at 328-29.  And, "the nature of the conduct may indicate whether or not the conduct is unwelcome." *Id.* at 329.

To satisfy the second element of a hostile work environment claim, the plaintiff must demonstrate that she was harassed or otherwise discriminated against "because of" her protected class. 42 U.S.C. § 2000e–2; *see also Ocheltree*, 335 F.3d at 331; *Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir. 2000).  The plaintiff may satisfy this burden by showing that, "but for" her protected class, she would not have suffered discrimination.  *Smith*, 202 F.3d at 242.  But, "harassment due to personality conflicts will not suffice.  Some persons, for reasons wholly unrelated to [the plaintiff's protected class], manage to make themselves disliked."  *Ziskie v. Mineta*, 547 F.3d 220, 226 (4th Cir. 2008).

As to the third element, a hostile work environment exists when the "'workplace [is] permeated with discriminatory intimidation, ridicule, and insult[.]'"  *Boyer-Liberto*, 786 F.3d at 281 (some quotations and citation omitted) (quoting *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006)); *see Harris*, 510 U.S. at 21; *Nnadozie*, 730 F. App'x at 158.  The Fourth Circuit has stated that the plaintiff must allege that "the environment would reasonably be perceived, and is perceived, as hostile or abusive."  *Boyer-Liberto*, 786 F.3d at 277 (citing *Harris*, 510 U.S. at 22).

The "severe or pervasive" requirement has both subjective and objective components.  *See Harris*, 510 U.S. at 21-22; *Perkins*, 936 F.3d at 207-08; *Strothers*, 895 F.3d at 331; *EEOC. v. Cent. Wholesalers Inc.*, 573 F.3d 167, 175 (4th Cir. 2009).  But, "[w]hether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'"  *Boyer-Liberto*, 786 F.3d at 277 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)); *see Irani*, 767 F. App'x at 416; *Nnadozie*, 730 F. App'x at 158.  However, the plaintiff does not need to demonstrate that the work environment is "psychologically injurious."  *Boyer-Liberto*, 786 F.3d at 277.

Notably, "viable hostile work environment claims often involve repeated conduct. . . . because, 'in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'" *Boyer-Liberto*, 786 F.3d at 277 (citation omitted); *see Irani*, 767 F. App'x at 416. But, "an 'isolated incident[]' of harassment can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.'" *Boyer-Liberto*, 786 F.3d at 277 (alterations in original) (citation omitted).

The Court stated in *Perkins*, 936 F.3d at 208: "'[W]hen determining whether the harassing conduct was objectively severe or pervasive, we must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" (Alteration in original) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008)). "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Perkins*, 936 F.3d at 208 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Likewise, the "'[m]ere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment[.]" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 21) (other citations omitted). And, "complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable." *Sunbelt Rentals*, 521 F.3d at 315-16 (internal quotation marks and citations omitted); *see Nnadozie*, 730 F. App'x at 161-62.

Of import here, "[i]n measuring the severity of harassing conduct, the status of the harasser may be a significant factor—e.g., a supervisor's use of [a racial epithet] impacts the work

environment far more severely than use by co-equals." *Boyer-Liberto*, 786 F.3d at 278 (citation omitted); *see also E.E.O.C. v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 329 (4th Cir. 2010) ("When evaluating the context in which harassment takes place, we have often focused on the 'disparity in power between the harasser and the victim.'") (citation omitted); *Jennings v. Univ. of N.C.*, 482 F.3d 686, 697 (4th Cir. 2007) (en banc) ("Any age disparity between the harasser and his victim is also relevant to gauging whether there was a hostile or abusive sexual environment.").

At bottom, the determination as to "severe and pervasive" is not, and "'by its nature cannot be, a mathematically precise test.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 22). Consequently, "no single factor is dispositive, as the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Sunbelt Rentals*, 521 F.3d at 315 (quoting *Harris*, 510 U.S. at 23, and *Oncale*, 523 U.S. at 81-82) (cleaned up).

Plaintiff's hostile work environment claims are based on incidents in 2012 and 2013, including alleged unfounded criticism by plaintiff's supervisor as to plaintiff's performance; plaintiff's supervisor mocking her for crying in the workplace; plaintiff's supervisor yelling at her; and the Agency's denial of plaintiff's reassignment requests. *See* ECF 10-2 at 39. Plaintiff also points to her "negative performance appraisals, placing her on absent without leave, and removing her from federal service." ECF 1, ¶ 128.

In sum, the alleged conduct relevant to the claim consists primarily of a handful of offensive and unpleasant interactions between plaintiff and her supervisor and frustration with management decisions. A personality conflict does not support a hostile work environment claim. Nor does unprofessional behavior by a supervisor necessarily give rise to such a claim. Indeed,

courts have declined to find a hostile work environment based on workplace conduct far more egregious than what is alleged here. *Cf. Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (per curiam) (stating that allegations of a supervisor mockingly yelling at the plaintiff in a meeting, "repeatedly harping on a mistake" by the plaintiff, and "unfairly scrutinizing and criticizing" plaintiff's failure to follow directives, fall "far short of being severe or pervasive enough to establish an abusive environment" (internal alterations omitted)); *Vincent v. MedStar S. Md. Hosp. Ctr.*, No. 16-cv-1438-TDC, 2017 WL 3668756, at *9-10 (D. Md. Aug. 22, 2017) (finding plaintiff failed to allege hostile work environment where supervisor yelled at employee, called her "stupid," refused to communicate with her, and restricted her access to the computer system); *Tims v. Carolinas Healthcare Sys.*, 983 F. Supp. 2d 675, 680-81 (W.D.N.C. 2013) (granting motion to dismiss where plaintiff alleged supervisor referred to her as "you people" and "y'all blacks" because "isolated comments do not rise to the level of severity necessary to alter the terms and conditions of employment"). Moreover, "[d]isagreements with management decisions ... do not rise to the level of a hostile work environment." *Spida v. BAE Sys Info. Sols., Inc.*, No. 1:16-cv-979, 2016 WL 7234088, at *6 (E.D. Va. Dec. 13, 2016).

Further, plaintiff presents no facts that the allegedly hostile conduct was based on her disability. To be sure, Smith makes clear that her supervisor and others knew of her disability. But, that does not suffice. Plaintiff's hostile work environment claims in Counts I and IV are subject to dismissal.

### D. Service of Process

As noted, defendant has moved to dismiss the suit based on plaintiff's failure to effectuate service on one federal official. Fed. R. Civ. P. 12(b) provides that, before submitting a responsive pleading, a defendant may move to dismiss a complaint for "insufficient service of process."

A "Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery[ ] of the summons and complaint."  5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353 (3d ed. 2004, Supp. 2016).  Valid service of process is a prerequisite for personal jurisdiction over the defendant. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Hawkins v. i-TV Digitalis Tavkozlesi zrt*., 935 F.3d 211, 228 (4th Cir. 2019).

Under Fed. R. Civ. P. 12(b)(5), a defendant may seek dismissal of the suit for "insufficiency of service of process." *See Archie v. Booker*, DKC-14-0330, 2015 WL 9268572, at *2 (D. Md. Dec. 21, 2015). And, notwithstanding that plaintiff is a pro se litigant, she must adhere to the Federal Rules of Civil Procedure. *See, e.g., McNeil v. United States*, 508 U.S. 106, 113 (1993); *Hansan v. Fairfax Cty. Sch. Bd.*, 405 F. App'x 793, 794 (4th Cir. 2010) (per curiam); *Danik v. Hous. Auth. of Balt. City*, 396 F. App'x 15, 16–17 (4th Cir. 2010) (per curiam).

Under Rule 4(m), a plaintiff must serve a defendant "within 90 days after the complaint is filed." If a defendant is not served within that time, "the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* Rule 4(m) provides that, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* In the context of Rule 4(m), "good cause" entails "some showing of diligence on the part of the plaintiffs." *Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019). This occurs "when the failure of service is due to external factors, such as the defendant's intentional evasion of service." *Id.*

"Once service has been contested," as here, "the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006); *accord*, *e.g.*, *Baylor v. Wegman's Food Market, Inc.*, WDQ-14-3330, 2015 WL 4396609,

at *1 (D. Md. July 16, 2015). Thus, plaintiff bears the burden of showing that service has been properly effected. *See Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 304 (4th Cir. 2016) (per curiam).

Rule 4(i) requires that a plaintiff who brings an action against a federal agency, like defendant in this case, for "an act or omission occurring in connection with duties performed on the United States' behalf," must serve a summons and a copy of the complaint on the agency, the United States Attorney, the Attorney General of the United States, and the individual, *i.e.*, the Secretary of the Army. *See* Fed. R. Civ. P. 4(i).  Under 32 C.F.R. § 516.14, "[t]he Chief, Litigation Division, shall accept service of process … for the Secretary of the Army in his official capacity." According to defendant, the Army's Chief of the Litigation Division at the relevant time was Colonel Jacqueline Emanuel. ECF 10-1 at 22.

On August 11, 2020, summons returns were executed, evidencing service on June 8, 2020, via certified mail, on the United States Attorney, the Attorney General of the United States, of the United States, and "[Major General] Joel K Tyler, ATEC HQ" in "APG, MD." ECF 5.  Plaintiff contends that she received "faulty advice" in regard to service.  ECF 15 at 16.  In her opposition, plaintiff explains that she served MG Tyler "on the advice that he represented the organization [i.e., the Army] and needed to be served." *Id.* at 17. And, she claims that no one informed her that service was insufficient. *Id.*

By failing to serve Colonel Emanuel, Smith has not properly served the Secretary with process, in accordance with applicable federal regulations and Rule 4.  Insufficient service of process does not always necessitate dismissal, however.  *See*, *e.g.*, *Pugh v. E.E.O.C.*, DKC-13-02862, 2014 WL 2964415, at *3 (D. Md. June 30, 2014).  And, "'when service of process gives the defendant actual notice of the pending action, the court may construe Rule 4 liberally.'"  *Miller*

*v. Baltimore City Bd. of Sch. Comm'rs*, 833 F. Supp. 2d 513, 516 (D. Md. 2011) (quoting *O'Meara*, 464 F. Supp. 2d at 476).  Generally, "[w]here 'the first service of process is ineffective, a motion to dismiss should not be granted, but rather the Court should treat the motion in the alternative, as one to quash the service of process and the case should be retained on the docket pending effective service.'"  *Pugh*, DKC-13-2862, 2014 WL 2964415, at *3 (quoting *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983)).

Plaintiff is proceeding pro se and has clearly made an effort to comply with the rules.  The Army has received actual notice of the suit. Therefore, I decline to dismiss the Complaint under Rule 12(b)(5).  Rather, by **September 24, 2021,** plaintiff must effect proper service of process on the unserved individual defendant.

## E.  Conclusion

For the foregoing reasons, I shall grant the Motion in part and deny it in part.  In particular, I shall grant the Motion as to the hostile work environment claims in Counts I and IV, and as to Count V for failure to exhaust. But, I shall otherwise deny the Motion.

An Order follows, consistent with this Memorandum Opinion.


Date: September 3, 2021                                    _____/s/_____

                                                          Ellen L. Hollander
                                                          United States District Judge