**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**AMANDA SMITH,** *

***Plaintiff*,** *

**v.** * **Case No. 1:20-cv-00419-JRR**

**CHRISTINE WORMUTH,** *

***Defendant.*** *

* * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Amanda Smith filed this action against Defendant Christine Wormuth, Secretary of the Army, alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.* (the "Rehabilitation Act"). (ECF No. 1.) Pending now before the court are two motions: Defendant's Renewed Motion for Summary Judgment on Count III (ECF No. 112; "Defendant's Motion") and Plaintiff's "Motion to and Memorandum in Support of Amending the Court's March 8, 2024 Memorandum Opinion and Order to Include a Certification under 28 U.S.C. § 1292(b)" (ECF No. 111; "Plaintiff's Motion"). The court has reviewed all papers, and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, Defendant's Motion will be granted, and Plaintiff's Motion will be denied as moot.

## I. BACKGROUND

This action arises from Plaintiff's employment as a Program Analyst for Defendant's Army Testing and Evaluation Command ("ATEC") at Aberdeen Proving Ground in Aberdeen, Maryland. (ECF No. 88-3 at p. 2.) As a Program Analyst, Plaintiff's chain of command included Barbara Monger as first-level supervisor and David Glenn as second-level supervisor. (ECF No. 88-3 at p. 2; ECF No. 88-6 at 28:5–14.) The court incorporates by reference its discussion of the

relevant factual background in this case as detailed in Section I of its memorandum opinion at ECF No. 104.

On March 8, 2024, the court issued a memorandum opinion and order denying Plaintiff's Amended Motion for Summary Judgment (ECF No. 85) and granting in part and denying in part Defendant's Cross Motion for Summary Judgment (ECF No. 88). (ECF Nos. 104, 105.) The court denied both parties' motions with respect to Plaintiff's interference claim under the Rehabilitation Act ("Count III") for lack of legal argument. (ECF No. 104 at p. 26– 27.) Defendant subsequently moved for reconsideration of the court's decision with respect to Count III, which the court denied. (ECF No. 110.) In the interests of justice and judicial efficiency, however, the court permitted the parties to renew their motions for summary judgment solely on Count III with fulsome briefing. (ECF No. 110.) Defendant then filed her Renewed Motion for Summary Judgment on Count III. (ECF No. 112.) In addition to opposing Defendant's Motion, Plaintiff also seeks certification for immediate appeal of the court's earlier memorandum opinion and order pursuant to 28 U.S.C. § 1292(b), which Defendant opposes. These are the Motions currently before the court.

## II. DEFENDANT'S MOTION

### A. Legal Standard

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for

summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Id.* (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). "In other words, a factual dispute is genuine only where 'the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find' in its favor." *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 175 (4th Cir. 1988)).

In undertaking this inquiry, the court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).

**B. Interference in Violation of the Rehabilitation Act**

"The Rehabilitation Act prohibits federal agencies from discriminating against its employees on the basis of disability." *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); 29 U.S.C. § 794(a). "The Rehabilitation Act incorporates by reference the 'remedies, procedures, and rights' established by Title VI of the Civil Rights Act of 1964 (codified at 42 U.S.C. § 2000d, *et seq.*), which prohibits discrimination on the basis of race, color, or national origin by recipients of federal financial assistance." *Prosa v. Austin*, No. CV ELH-20-3015, 2022 WL 394465, at *26 (D. Md. Feb. 8, 2022) (citing 29 U.S.C. § 794a(a)(2)). It is also closely related to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq. Id.* Accordingly, "to the extent possible, [courts] construe similar provisions in the two statutes consistently." *Id.* (quoting *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214 (4th Cir. 2002)). *See Seremeth v. Board of Cnty. Comm'rs Frederick Cnty.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012) ("Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same." (citation omitted)). The "standards used to determine whether an employer has discriminated under the Rehabilitation Act" are those that apply to the ADA. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001). Relevant here, a claim alleging interference under the Rehabilitation Act "is controlled by the standards of the ADA." *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017). Under the Rehabilitation Act, the standards used to determine whether a violation has occurred "in a complaint alleging employment discrimination . . . shall be the standards applied under," at issue here, Section 503 of the ADA. 29 U.S.C. § 794.

Section 503 of the ADA provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having

exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b). While the Fourth Circuit has not yet established a standard for an interference claim under the ADA, it and other circuits have referred to a standard akin to the interference standard under the Fair Housing Act ("FHA") that has been adopted by other circuits. *See Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 171 (4th Cir. 2024) (interpreting an interference claim using the framework adopted by the Seventh Circuit based on the FHA); *Frakes*, 872 F.3d at 550 ("Because the ADA anti-interference clause is identical to the anti-interference clause found in the FHA, we use the FHA framework to establish the legal standard for an ADA interference claim." (citations omitted)); *Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003) ("Mindful that similarities between statutory provisions are an indication that Congress intended the provisions to be interpreted the same way, our construction and application of § 503(b) ought to be guided by our treatment of the FHA's interference provision." (citations omitted)). Both parties agree that Plaintiff's claim should be analyzed according to the framework utilized in *Kelly*. (ECF No. 112-1 at p. 6; ECF No. 114 at p. 7.)

A plaintiff asserting an interference claim must show: "(1) she engaged in activity statutorily protected by the ADA; (2) she was engaged in . . . the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate." *Frakes*, 872 F.3d at 550–51. *See Kelly*, 90 F.4th at 171 ("[a]ssuming without deciding" that the *Frakes* standard applied). "The statutory term 'interfere with' is broader than retaliation, and captures 'all practices which have the effect of interfering with the exercise of rights' under the ADA." *Kelly*, 90 F.4th at 171. Still, the interference provision "cannot be so broad as to prohibit any action

whatsoever that in any way hinders a member of a protected class." *Brown*, 336 F.3d at 1192 (quoting *Mich. Prot. & Advocacy Serv. v. Babin,* 18 F.3d 337, 347 (6th Cir. 1994)).

**A. Statutorily Protected Activity and the Exercise and Enjoyment of Rights**

Given the nature of Plaintiff's interference claim, the court's analysis of the first and second elements are combined. To support an interference claim under the Rehabilitation Act, Plaintiff must show that she engaged in protected activity and was engaged in the "exercise or enjoyment of ADA protected rights." *See Frakes* , 872 F.3d at 550–51, *supra*. "Protected activities are those statutorily protected under the ADA, including opposing or complaining about discrimination based on disability." *Id.* at 551. "Protected activity" includes requests for accommodation. *Kelly*, 90 F.4th at 166. *See Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001) (holding that an accommodation request constitutes protected activity that may sustain a retaliation claim); *Leckie v. Bd. of Educ. of Montgomery Cnty.*, No. CV TDC-23-0299, 2023 WL 8809310, at *7 (D. Md. Dec. 19, 2023) (holding that "for purposes of a retaliation claim, an employee's request for reasonable accommodations is a protected activity.").

"It is not difficult to request an accommodation. To trigger an employer's duty to accommodate, a disabled employee need only "communicate[ ] [her] disability and desire for an accommodation." *Kelly*, 90 F.4th at 166 (quoting *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 581 (4th Cir. 2015)). The employee "need not specify 'the precise limitations resulting from the disability,' or 'identify a specific, reasonable accommodation.'" *Id.* (quoting *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 179 (4th Cir. 2023), and *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 581 (4th Cir. 2015)). However, "not every work-related request by a disabled employee constitutes a request for accommodation under the ADA"; indeed, the request "must make clear that the employee wants assistance for his or her disability." *Id.* at 167.

> These limitations enable employers to differentiate between protected requests for accommodation and everyday workplace grievances. As discussed above, to kickstart the interactive process, "the employee must make an adequate request, thereby putting the employer on notice." *Lashley*, 66 F.4th at 179 (quoting [*Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013]). But an employee may seek changes to his working conditions for any number of reasons unrelated to a disability, such as "the kind of personality conflict that pervades many a workplace." *Ziskie v. Mineta*, 547 F.3d 220, 227 (4th Cir. 2008). . . . Accordingly, just as an employee need not "formally invoke the magic words 'reasonable accommodation,'" [*Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1188 (10th Cir. 2016)], those magic words are not sufficient to trigger the employer's duty to pursue the ADA interactive process. Instead, to place the employer on notice, there must be a logical bridge connecting the employee's disability to the workplace changes he requests. Though this bridge need not be explicit in the accommodation request, the substance of the request must permit the employer to infer that the request relates to the employee's disability. The substance of the employee's communication, not its title, determines whether the ADA applies.

*Id.* at 167–68.

In *Kelly,* quoted at length above, the Fourth Circuit held that the district court did not err when it found that the plaintiff's letter entitled "Accommodation Requests" did not constitute an accommodation request within the meaning of the ADA because its content was not connected to the plaintiff's disabilities. *Id.* Particularly relevant here, the Fourth Circuit explained that the necessary "logical bridge" between the accommodation request and the employee's disability was absent. *Id.* at 168. The court explained:

> [The plaintiff] maintains that it is immediately apparent why a more organized, less stressful working environment would alleviate his anxiety, depression, and high blood pressure. But that alone does not change the substance of the letter or transform the letter into a request for accommodations. Personality conflicts, technical difficulties, and challenging assignments can all exacerbate anxiety

> symptoms. But employees frequently request workplace changes to address these situations for reasons other than their disabilities, such as workplace comfort or efficiency. Under [the plaintiff's] argument, an employee with anxiety would be entitled to the full protections of the ADA anytime his employer could anticipate that such changes might ameliorate his symptoms. Such a result would be untenable.

*Id.* at 168 (citations omitted).

Complaints of discrimination to an employer, including "informal protests," can also constitute protected activity. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) ("Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."); *Armstrong v. Index J. Co.*, 647 F.2d 441, 448 (4th Cir. 1981) ("The opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures."); *Battle v. Burwell*, No. PWG-14-2250, 2016 WL 4993294, at *14 (D. Md. Sept. 19, 2016) ("[The plaintiff] engaged in protected activity when he first sought EEO counseling on June 13, 2011, when he filed his first EEO complaint on August 10, 2011 . . .")

Here, Defendant argues that Plaintiff cannot rely on any "alleged interference that occurred prior to October 8, 2013" to support her interference claim because that was the date of her formal request for accommodation. (ECF No. 112-1 at p. 7.) The court, however, discerns four specific instances of alleged protected activity:[1] (1) Plaintiff's purported complaint to the ATEC EEO

[1] It is unclear whether Plaintiff intended to assert her participation in an EEO investigation resulting from her prior employment with the Army Research Engineering Department Command ("RDECOM") in June 2012 as protected activity at issue in her interference claim. (ECF No. 114 at p. 2.) Acting as a witness in an EEO investigation is certainly protected participation, *see* 42 U.S.C. § 12203 ("No person shall discriminate against any individual because such individual . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."), but Plaintiff's allegations otherwise provide no connection between her participation in the RDECOM EEO investigation and the purported delay in responding to her accommodation requests.

Office and Human Resources on April 29, 2013; (2) Plaintiff's email to ATEC EEO Counselor Kelly Keck and Human Resources on May 2, 2013, containing a complaint statement and medical documentation of her April 29, 2013, visit to Patient First; (3) Plaintiff's initial contact with ATEC EEO Counselor Barbara Hageric on May 28, 2013, preceding her formal complaint of disability discrimination and hostile work environment; and (4) Plaintiff's formal complaint of discrimination filed on July 12, 2013, with "USAG Aberdeen Proving Ground," claiming disability discrimination, reprisal, and failure to accommodate due to the delay in granting her reassignment request.[2] (ECF No. 114 at p. 2–3; ECF No. 88-24; ECF No. 88-25.)

As an initial matter, the court concludes that Plaintiff's purported complaint and request for accommodation to Mr. Keck on April 29, 2013 (and subsequently Sharlene Lyle in Human Resources that same day), is not protected activity. In Mr. Keck's summary of his April 29 conversation with Plaintiff, he wrote that Plaintiff "[did] not know of any basis for a discrimination claim through the EEO office," and so he referred her to Ms. Lyle in the Management and Employee Relations Office because supervisor-employee working relationships are "generally handled" through that office. (ECF No. 88-9.) The summary explicitly notes that Plaintiff did not know of a discriminatory basis for her complaints, contains no reference to Plaintiff's status as a person with a disability, and fails to set forth any "logical bridge" between the relief requested and her disability. *Id.* *See Kelly*, 90 F.4th at 168, *supra*. Similarly, although the email from Plaintiff to Mr. Keck (of May 2, 2013) includes a complaint and Patient First treatment summary following the incident on April 29, 2013, it fails for the same reasons: the medical documentation from Plaintiff's April 29 medical visit notes that Plaintiff had a "panic attack" and presented with an "anxiety state," but it does not set forth or contain documentation, at least on its face, of any of

[2] Plaintiff's brief appears erroneously to state that the formal request for accommodation and of reprisal was filed on May 28, 2013. *See* ECF Nos. 88-24, 88-25.

Plaintiff's existing disabilities or how they were related to her medical treatment on that visit. *See Kelly*, 90 F.4th at 168, *supra*; ECF No. 95-11 at p. 3. The court, however, disagrees with Defendant that Plaintiff's protected activity did not occur until October 8, 2013; Plaintiff made initial contact with an ATEC EEO Counselor on May 28, 2013, to report discrimination based on her disability and subsequently filed a related formal complaint. (ECF No. 88-24.) Such activity is protected under the law. *See Armstrong v. Index J. Co.*, 647 F.2d at 448, *supra*. Accordingly, the court does not agree with Defendant that only post-October 8, 2013, alleged interference is appropriate for the court to consider in its analysis of Plaintiff's claim.

**B. Intimidation or Interference**

The third element that Plaintiff must demonstrate to succeed in her interference claim is that Defendant "intimidated[] or interfered on account of her protected activity." *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550-51 (7th Cir. 2017). The interference provision "protects a broader class of persons against less clearly defined wrongs." *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003). *See also U.S. Equal Employment Opportunity Commission Enforcement Guidance On Retaliation and Related Issues*, 2016 WL 4688886, at *26–27(Aug. 25, 2016) (explaining that "[b]ecause the 'interference' provision is broader . . . it will reach even those instances when conduct does not meet the 'materially adverse' standard required for retaliation. . . . The interference provision does not apply to any and all conduct or statements that an individual finds intimidating. In the Commission's view, it only prohibits conduct that is reasonably likely to interfere with the exercise or enjoyment of ADA rights.").[3] However, because

[3] The U.S. Equal Employment Opportunity Commission guidance, though not controlling, provides the court with "informed judgment" and "guidance" on interference claims. *See Wirtes v. City of Newport News*, 996 F.3d 234, 241 n.11 (4th Cir. 2021) ("[W]hile not controlling upon the courts by reason of their authority, [EEOC Guidelines] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.") (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).

interference claims under the ADA or Rehabilitation Act are rare, there is a "dearth of appellate cases outlining"—and more importantly interpreting—"its elements." *Sowers v. Bassett Furniture Indus., Inc.*, No. 4:19CV00039, 2021 WL 276169, at *9 (W.D. Va. Jan. 27, 2021).

Defendant asserts that Plaintiff's claim of interference is based solely on an allegation that her employees did not timely process Plaintiff's accommodation request, or approve it to Plaintiff's satisfaction, and such claims do not demonstrate that Plaintiff was "coerced, threatened, intimidated or interfered with" because of her protected activity. (ECF No. 112-1 at p. 8–9.) To support her claim for interference, Plaintiff points to the following purported intimidating or interfering actions on account of her protected activity: Mr. Glenn did not tell her that her request for reassignment would have been considered if she had provided medical documentation; Mr. Glenn declined to consider Plaintiff's accommodation request until the Article 15-6 was completed;[4] ATEC waited until Plaintiff's Family and Medical Leave Act ("FMLA") leave had expired to tell her what documentation was needed to consider her accommodation request; Ms. Monger went by Plaintiff's desk every morning after the April 29 incident and had her work schedule align to Plaintiff's work schedule; and ATEC deactivated Plaintiff's badge, building, and network access while she was on leave. (ECF No. 114 at p. 4–5.) Notably, Plaintiff's response makes clear that her "allegation of interference is not based on [Defendant's] refusal to even consider let alone approve the request for reassignment as a reasonable accommodation," but rather Defendant's actions "that continued to punish Plaintiff" for "engaging in protected activity."[5] (ECF No. 114 at p. 9.)

[4] It is not readily apparent from either the briefing of the current matter or previous summary judgment briefing what allegations were investigated as part of the Article 15-6 investigation.

[5] Defendant offers additional arguments that the court need not address because Plaintiff's opposition clarified the scope and basis of her interference claim.

Plaintiff fails to generate a genuine dispute of material fact as to whether Defendant attempted to intimidate or interfere with Plaintiff's exercise of her rights under the Rehabilitation Act on account of her protected activity; that is, the evidence does not permit a conclusion in Plaintiff's favor on this element. The court previously held that, based on the facts at issue here, Plaintiff's request for reassignment to another supervisor was not legally reasonable.[6] *See* ECF No. 104; *Adinolfi v. N. Carolina Dep't of Just.*, No. 5:18-CV-539-FL, 2022 WL 956330, at *17 (E.D.N.C. Feb. 25, 2022), *aff'd,* No. 22-1329, 2023 WL 1814206 (4th Cir. Feb. 8, 2023) (concluding that while reassignment certainly may be a reasonable accommodation in some instances, though one of "last resort," where the request was "not triggered by a particular essential function" of the position, but rather the presence of a supervisor, the request was not reasonable). *See also* ECF No. 117 at p. 1 (containing Plaintiff's acknowledgment that it was "an accurate statement" to say that her request for reassignment was "simply a request to be moved away from her direct supervisor"). Accordingly, the request for reassignment was not exercise of a protected right under the ADA and Rehabilitation Act, and therefore delay in responding to the request cannot constitute interference with Plaintiff's exercise or enjoyment of her rights.

Further, even if Plaintiff's accommodation request was reasonable, there is no evidence to support Plaintiff's self-serving assertion that Mr. Glenn refused to respond to her request for accommodation in an attempt to interfere with her exercise of her rights on account of her protected

[6] Plaintiff contends that the court's decision on this issue goes against "the letter, and the spirit, of the law." The court stands by its analysis and notes that Plaintiff may misconstrue its holding: the court did not conclude that reassignment cannot be a reasonable accommodation as a matter of law (or request for same); rather, the court concluded, based on the undisputed material facts, that Plaintiff's request for reassignment was not a protected reasonable accommodation request as a matter of law, as the request was not "triggered by a particular essential function" of the position, but instead by Ms. Monger's presence as a supervisor. *See* ECF No. 104; *Adinolfi v. N. Carolina Dep't of Just.*, No. 5:18-CV-539-FL, 2022 WL 956330, at *17 (E.D.N.C. Feb. 25, 2022), *aff'd,* No. 22-1329, 2023 WL 1814206 (4th Cir. Feb. 8, 2023).

activity.[7] The delay itself is insufficient to show that it was done for the purpose of interfering with Plaintiff's rights. *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). *Cf. Cole v. Washington Grp. Int'l, Inc.*, No. CV RWT 06-2557, 2008 WL 11509726, at *3 (D. Md. Mar. 14, 2008) ("If summary judgment is to serve any purpose, a plaintiff in a discrimination suit cannot be allowed to trudge onward to trial by merely asserting, without offering any specific facts, that a defendant stated that he was taking an adverse employment action because of a discriminatory motive."). The court's decision is further supported by the Ninth Circuit's caution against "too broad a reading of the ADA's interference provision," and that the interference provision should not be read to "bar any action whatsoever that in any way hinders a member of a protected class." *Brown*, 336 F.3d at 1193 (citation omitted).

Similarly, allegation that ATEC delayed in informing Plaintiff of the necessary documentation for an accommodation request until after expiration of her FMLA leave is unsupported by the record evidence and insufficient to show interference. The evidence to which Plaintiff cites includes Mr. Keck's summary of his conversation with Plaintiff on April 29, 2013 (ECF No. 34-39 at p. 2); a September 30, 2013, email exchange between Mr. Keck and Plaintiff's husband (ECF No. 34-39 at p. 28–29); Defendant's November 7, 2013 memorandum to Plaintiff and her husband relating to the September 30, 2013, email exchange with Mr. Keck (ECF No. 34-39 at p. 41–42); and other documents that refer to Plaintiff's request for leave without pay—not reassignment to another supervisor. (ECF No. 34-39 at p. 55–59; ECF No. 45-33 at p. 8). The email communication with Mr. Keck and the related memorandum coincide with Plaintiff's

[7] The court further observes, without deciding, that additional undisputed facts may support Defendant's legitimate, nondiscriminatory reason for the delay, including the missing "logical bridge" between Plaintiff's other requests and her disability, as well as the undisputed fact that Defendant granted Plaintiff leave for months after the incident of April 29, 2013. (ECF No. 112-1 at p. 3; ECF No. 88-7.)

October 8, 2013, formal request for accommodation, (ECF No. 88-19), and show Defendant's effort to engage regarding Plaintiff's request, not intentional delay in response. It is thus unclear how such undisputed communications constitute interference as a matter of law. The communications related to Plaintiff's requests to take leave without pay similarly do not reflect her request for reassignment to another supervisor—what is at issue in her interference claim.

Finally, evidence related to Ms. Monger and Plaintiff's computer, network, and building access do not generate a material factual dispute, which is to say this evidence does not compel a different dispositive motions result. Ms. Monger stopping by Plaintiff's desk once a day (for seemingly a total of six days) and that she kept a schedule similar to Plaintiff's are ordinary, expected interactions with a supervisor; without more, these interactions do not constitute intimidation as a matter of law for purposes of Plaintiff's interference claim. *See Brown*, 336 F.3d at 1192 (9th Cir. 2003) ("Clearly, anti-interference provisions such as those contained in the FHA and ADA cannot be so broad as to prohibit 'any action whatsoever that in any way hinders a member of a protected class.'").

Further, Defendant's deactivation of Plaintiff's access to the ATEC network, her computer, and the building while she was on extended leave is insufficient to support a finding of an effort to interfere with the exercise of her rights. While on leave, Plaintiff did not have authorization to telework; therefore, her access to these workplace features had no bearing on her full exercise of her rights (or her return to work). The court appreciates that information relevant to her complaints was stored on Plaintiff's computer, but this has no bearing on enjoyment and exercise of her accommodation rights. *Accord, DeJarnette v. Corning Inc.*, 133 F.3d 293, 298–99 (4th Cir. 1998) ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination . . . . Our sole

concern is whether the reason for [the contested employment action] was discriminatory. Thus, when an employer articulates a reason for [the contested employment action] not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [contested employment action]." (citations omitted)). The court, therefore, concludes that Plaintiff fails to generate a genuine dispute of material fact as to this element.[8]

**C. Discriminatory Intent**

Even if the court were to find that the actions identified *supra* could constitute actions to intimidate or interfere as a matter of law, Plaintiff's interference claim still fails as a matter of law because, as in *Kelly*, she has not alleged any facts that demonstrate the final element—that Defendant was motivated by an attempt to discriminate against her. *Kelly*, 90 F.4th at 172. The final element that Plaintiff must demonstrate is that Defendant interfered, or intimidated, with a motive of discriminatory intent. *Frakes*, 872 F.3d at 550–51. Defendant argues that there is no evidence that she was motivated by an intent to discriminate, and that, to the extent Plaintiff relies on the actions of Ms. Monger, Ms. Monger was not involved in the accommodation process. (ECF No. 112-1 at p. 9–10.)

---

[8] The court appreciates that Rule 56 is a tough task-master. Nonetheless, it warrants more than this passing mention would convey that Plaintiff's references to the record often verged on impossible to follow. In some instances, for example, Plaintiff asserted the existence of a record-evidence fact, but cross-referenced another brief as the supportive citation – instead of the original source. This fails to comply with Rule 56(c)(1)(A). As a result, the court was tasked with reviewing the separate brief, finding the factual allegation that mirrored the one asserted in the present brief, and searching for the proper exhibit citation. In other instances, when Plaintiff did provide a record citation in support of a claimed material factual dispute, the exhibits were incomplete and without sufficient detail for the court to determine the nature or context of the document, who the purported author, speaker, or recipient was, or when the document was made. The court has done its yeoman best to consume and evaluate Plaintiff's cogent arguments and has diligently viewed the facts in a light favorable to her. But it bears mentioning that "[j]udges are not like pigs, hunting for truffles buried in briefs." *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 42 F.4th 300, 315 (4th Cir. 2022); *see also Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted) (explaining that a Rule 56 non-movant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another").

Plaintiff's argument section of her brief merely states that "[a]ll of the roadblocks placed before Ms. Smith were designed to interfere with her exercise of her enjoyment of" her Rehabilitation Act rights. (ECF No. 114 at p. 9–10.) Such a conclusory assertion is certainly insufficient to demonstrate a genuine dispute of material fact as to the final element. That said, viewing the facts in a light most favorable to Plaintiff, the court reads Plaintiff's opposition broadly.

To the extent Plaintiff asserts alleged discriminatory intent because Defendant interfered with her rights by delaying its response to her request for accommodation, such an allegation is conclusory and is self-serving. (ECF No. 114 at p. 4–6.) The allegation on its own permits of no suggestion of, let alone factual support to show, discriminatory intent. Plaintiff appears to argue further that the following allegations are evidence of discriminatory intent: Mr. Glenn believed that Plaintiff was not a person with a disability within the meaning of the ADA; Ms. Monger told another employee of Defendant that Plaintiff was a "lying bitch"; Ms. Monger joked about Plaintiff's cleavage with another Defendant employee; and Ms. Monger sent an email to another employee on April 3, 2014, regarding concerns about Plaintiff being able to enter the building even though she did not have access "([d]ue to the recent event at F[ort] Hood").[9] (ECF No. 114 at p. 5.)[10]

Even assuming Mr. Glenn and Ms. Monger were both aware of Plaintiff's protected activity, Plaintiff has not generated a genuine dispute of material fact with regard to Defendant's discriminatory motive. Regarding Mr. Glenn, Plaintiff provides four record citations to support her claim that Mr. Glenn "did not regard Plaintiff's condition as a disability." (ECF No. 114 at p.

---

[9] Plaintiff's reference to settlement discussions (ECF No. 114 at p. 4) will not be considered. FED. R. EVID. 408.
[10] This email was attached as Exhibit 20 to Plaintiff's Amended Motion for Summary Judgment at ECF No. 85. Without seeking leave of the court, Plaintiff filed all exhibits attached to this motion solely in paper form.

4.) None of these citations bear upon Mr. Glenn's thoughts, impressions, or opinions regarding Plaintiff's disabled status. *See* ECF No. 94-8 at 437:1–16 (showing an incomplete EEOC hearing transcript with testimony from Mr. Glenn that he did not know if the medical documentation provided by Plaintiff following the April 29, 2013 incident was intended to be "work-force related or injury related"); ECF No. 94-16 (showing an incomplete EEOC hearing transcript with testimony from an unidentified witness that he or she perceived Plaintiff's "informal request for a reassignment" prior to October 2013 as related to her relationship with her supervisor and not a disability); ECF No. 34-13 at p. 2 (showing a September 23, 2013, email exchange identifying Mr. Glenn as the final decisionmaker on one of Plaintiff's reassignment requests); ECF No. 94-6 (showing an incomplete EEOC hearing transcript with testimony from an unidentified witness). At most, Mr. Glenn's EEOC testimony demonstrates that he did not know whether Plaintiff's medical documentation (provided to him after the incident of April 29, 2013) was "work-force related or injury-related." (ECF No. 94-8 at 437:7.) Viewed favorably for Plaintiff, these facts do not suggest, reflect, or support a conclusion that Mr. Glenn had a discriminatory motive or thought Plaintiff was not disabled despite her documentation to the contrary; rather, these portions of the record, if anything, favor a conclusion that Mr. Glenn did not appreciate that Plaintiff sought reassignment in connection with a disability. *See Kelly*, 90 F.4th at 167–68, *supra*. The remaining exhibits similarly do nothing to support, or generate a dispute of fact in favor of, Plaintiff's Count III.

Ms. Monger's actions warrant separate consideration. Ms. Monger's statements certainly indicate, at the very least, a strong distaste for Plaintiff; the court appreciates the emotional toll that might have taken on Plaintiff. However, while Ms. Monger's comments may indicate her dislike of Plaintiff, nothing in the record offered by Plaintiff suggests, reflects, or supports a

conclusion that Ms. Monger's conduct and words were motivated by, or based on, Plaintiff's disability. Ms. Monger's references to Plaintiff's cleavage and describing her as a "lying bitch" may "paint a picture of a workplace characterized by hostility and conflict," but they fail to demonstrate that Ms. Monger acted (stopping by Plaintiff's desk and having the same schedule) "because of [Plaintiff's] disabilities" and that she was "motivated by an intent to discriminate." *See Kelly*, 90 F.4th at 172, *supra*. The same is true of Ms. Monger's email seeking to ensure that Plaintiff no longer had access to the ATEC building after she had been on leave for almost a year. To be clear, the court does not conclude that the offensive remark contained in Ms. Monger's email can never be indicative of discriminatory animus; rather that it does not so indicate here. Not by a long shot.[11] *Cf. Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995), *as amended* (June 9, 1995), *as amended* (Mar. 14, 2008) ("Although courts must carefully consider summary judgment when intent is an issue, [t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." (citations omitted)).

Accordingly, even assuming the court concluded that Plaintiff had alleged Defendant acted to intimidate to interfere with her exercise or enjoyment of her rights under the Rehabilitation Act, there is no genuine dispute of material fact as to whether Defendant possessed a discriminatory

[11] The lack of temporal proximity of the email further supports the court's conclusion. Ms. Monger's email discussing safety concerns about Plaintiff and referencing the "recent event" at Fort Hood was sent on April 3, 2014—almost a year after the April 29, 2013, incident with Ms. Monger and since Plaintiff had been to the office (ECF No. 88-7); almost six months after Plaintiff's formal request for accommodation (ECF No. 88-19); almost four months after Plaintiff had been placed on Absence Without Leave status ("AWOL") by Defendant (ECF No. 88-16); and almost a month after Defendant provided Plaintiff with her Notice of Proposed Removal. (ECF No. 88-15). While the case law on interference has not conclusively established whether temporal proximity plays the same role in interference claims as in retaliation claims, *see Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (4th Cir. 2021) ("An adverse action that bears sufficient temporal proximity to a protected activity may, along with the existence of other facts, suggest that the adverse employment action occurred because of the protected activity."), the lack of temporal proximity between the email and the purported interference does not support Count III, rather it militates against it.

motive with respect to such alleged acts of interference. Defendant is therefore entitled to judgment as a matter of law on Plaintiff's Count III.[12]

## III. PLAINTIFF'S MOTION

Because the court concludes that Defendant is entitled to summary judgment on Plaintiff's interference claim—the only remaining count in this action—this court's order will constitute final judgment in favor of Defendant against Plaintiff on all counts asserted in the Complaint. Plaintiff's Motion seeking certification under 28 U.S.C. § 1292(b) will therefore be denied as moot.

## IV. CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Renewed Motion for Summary Judgment (ECF No. 112) will be GRANTED, and Plaintiff's "Motion to and Memorandum in Support of Amending the Court's March 8, 2024 Memorandum Opinion and Order to Include Certification under 28 U.S.C. § 1292(b)" will be DENIED AS MOOT.

June 7, 2024

/s/______________________
Julie R. Rubin
United States District Judge

---

[12] Neither party expressly argues that the *McDonnell Douglas* burden-shifting framework—the standard that allows a plaintiff who relies on indirect evidence of discrimination to shift the burden of production after making a prima facie case of discrimination by a preponderance of the evidence—applies here. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). It bears noting that the Fourth Circuit's decision in *Kelly* did not analyze the interference claim according to the *McDonnell Douglas* burden-shifting framework. Moreover, other circuits have concluded that interference claims are not subject to the *McDonnell Douglas* burden-shifting framework. *See Menoken v. Dhillon*, 975 F.3d 1, 9–10 (D.C. Cir. 2020) ("[S]ection 12203(b) does not operate as a retaliation provision subject to Title VII's burden-shifting framework."); *Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003) ("[W]e cannot affirm the district court's decision to analyze Brown's § 503(b) claim under Title VII's burden-shifting or hostile environment frameworks."); *Gardner v. Kutztown Univ.*, No. CV 22-1034, 2024 WL 1321068, at *30 (E.D. Pa. Mar. 27, 2024) ("This [interference] prohibition 'does not operate as a retaliation provision subject to Title VII's burden-shifting framework.'" (citation omitted)); *Menoken v. Burrows*, 656 F. Supp. 3d 98, 107 (D.D.C. 2023) (same). Even were the court to apply the burden-shifting framework, Defendant has offered legitimate, non-discriminatory reasons for the delay in responding to Plaintiff's accommodation requests, and Plaintiff's above-described citations to the record evidence are insufficient to support a finding of pretext. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) ("Once the question comes down to pretext, a plaintiff 'must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' A plaintiff could accomplish this goal 'by showing that the employer's proffered explanation is unworthy of credence.'" (citations omitted)).